MORRISON COHEN LLP
Jason P. Gottlieb (NY SBN 4056008)*
Daniel C. Isaacs (NY SBN 4875902)*
909 Third Avenue
New York, NY 10022
Telephone:  212.735.8600
Facsimile:  212.735.8708
jgottlieb@morrisoncohen.com
disaacs@morrisoncohen.com
*admitted *pro hac vice*

HAHN LOESER & PARKS LLP
Michael J. Gleason (CA SBN 279434)
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Telephone: 619.810.4300
Facsimile: 619.810.4301
mgleason@hahnlaw.com

*Attorneys for Defendants Kyle Kistner, Tom Bean,*
*Leveragebox LLC, and bZeroX LLC*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN SARCUNI, *et al.*, on behalf of themselves and other similarly situated,<br><br>      Plaintiffs<br><br>      vs.<br><br>bZx DAO, KYLE KISTNER, TOM BEAN, HASHED INTERNATIONAL LLC, AGE CRYPTO LLC, OOKI DAO, LEVERAGEBOX LLC, and bZeroX LLC,<br><br>      Defendants. | **Case No. 3:22-cv-00618-LAB-DEB**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT FACTS .............................................................................. 4

    A.    The Protocol ............................................................................ 4

    B.    The Leveragebox Defendants ................................................ 5

    C.    The Hack Perpetrated On Defendants And The Protocol's Users.......... 5

    D.    The Fulcrum Terms Of Use To Which Plaintiffs Agreed ..................... 6

LEGAL STANDARD............................................................................. 7

ARGUMENT ....................................................................................... 8

    A.    Plaintiffs Plead No Facts That Warrant Piercing The Corporate Veil To Hold Bean And Kistner Individually Liable ............................. 8

    B.    Plaintiffs' Claim Is Barred By The Terms Of Use ................................. 9

    C.    The Negligence Claim Fails As A Matter Of Law ............... 10

            1.    Bean And Kistner Lack a Duty of Care to Plaintiffs ..................12

            2.    bZeroX LLC And Leveragebox Lack a Duty of Care to Plaintiffs ..................13

            3.    No Other Potential "Partners" Of The Leveragebox Defendants Possibly  Owed Plaintiffs A Duty ..................17

            4.    Plaintiffs Allege No Breach..................17

    D.    BZRX Token Holders Are Not "Partners" With One Another ........... 18

    E.    The Class Allegations Should Be Stricken ........................................... 23

    F.    The Court Does Not Have Personal Jurisdiction Over Bean................. 24

CONCLUSION..................................................................................... 25

MEMORANDUM OF POINTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrew Farm v. Calcot, Ltd.*,
   268 F.R.D. 380 (E.D. Cal. 2010)........................................................................24

*Andrews v. Plains All Am. Pipeline, L.P.*,
   No. 15 Civ. 04113 (PSG), 2019 WL 6647930
   (C.D. Cal. Nov. 20, 2019)..........................................................................13, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................7, 19

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (2019) ....................................................................12, 14

*Bassam v. Bank of Am.*,
   No. 15 Civ. 00587 (MMM), 2015 WL 4127745 (C.D. Cal. July 8, 2015) ..........7

*In re Beer Distrib. Antitrust Litig.*,
   188 F.R.D. 549 (N.D. Cal. 1988) ...............................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................7

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
   No. 04 Civ. 04825 (JW), 2005 WL 756610 (N.D. Cal. Apr. 1, 2005)..............10

*Cislaw v. Southland Corp.*,
   4 Cal. App. 4th 1284 (Ct. App. 1992) .........................................................20

*Damner v. Facebook Inc.*,
   No. 20 Civ. 05177 (JCS), 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .........14

*Diaz v. Intuit, Inc.*,
   No. 15 Civ. 01778 (EJD), 2018 WL 2215790
   (N.D. Cal. May 15, 2018)...............................................................11, 12, 15

*Dickenson v. Samples*,
   104 Cal. App. 2d 311 (1951) ...................................................................21

*Ewing v. Empire Cap. Funding Group, Inc.*,
   No. 17 Civ. 02507 (LAB), 2019 WL 157660 (S.D. Cal. Jan. 10, 2019)............25

*Fredianelli v. Jenkins*,
   931 F. Supp. 2d 1001 (N.D. Cal. 2013) ........................................................ 20, 21

*Gardiner v. Walmart Inc.*,
   No. 20 Civ. 04618 (JSW), 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 15

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ................................................................ 17

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................ 23

*Jenson v. IPEX USA, Inc.*,
   No. 08 Civ. 00016 (MJP), 2008 WL 5062657
   (W.D. Wash. Oct. 27, 2008) ............................................................................ 24

*Jones v. Goodman*,
   57 Cal. App. 5th 521 (2020) ............................................................................ 19

*Kappouta v. Valiant Integrated Servs., LLC*,
   No. 20 Civ. 01501 (TWR), 2021 WL 4806437 (S.D. Cal. Oct. 14, 2021) .......... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ............................................................................. 7

*Kirola v. City and Cnty. of San Francisco*,
   No. 07 Civ. 03685 (SBA), 2011 WL 996344 (N.D. Cal. Mar. 18, 2011) .......... 24

*Lindblom v. Santander Consumer USA, Inc.*,
   No. 15 Civ. 00990 (BAM), 2018 WL 573356 (E.D. Cal. Jan. 26, 2018) .......... 24

*Lopez v. Wells Fargo Bank*,
   No. 16 Civ. 00811 (AJB), 2017 WL 1336764 (S.D. Cal. Apr. 5, 2017) ............ 16

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985) ......................................................................... 23

*In re Marriage of Geraci*,
   144 Cal. App. 4th 1278 (2006) ........................................................................ 19

*Michael v. Honest Co., Inc.*,
   No. 15 Civ. 07059 (JAK), 2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) .......... 15

*People v. Park*,
   87 Cal. App. 3d 550 (Ct. App. 1978) ............................................................... 20

*Perry v. Lyons*,
No. 09 Civ. 00794 (JM), 2009 WL 3062409 (S.D. Cal. Sept. 22, 2009)..........25

*Razuki v. Caliber Home Loans, Inc.*,
No. 17 Civ. 01718 (LAB), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018)........18

*Rivlin v. Levine*,
195 Cal. App. 2d 13 (1961) ...............................................................20

*S. California Gas Leak Cases v. Superior Ct. of Los Angeles*,
7 Cal. 5th 391 (2019)......................................................................*passim*

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009)......................................23, 24

*Sekerke v. City of Nat'l City*,
No. 19 Civ. 01360 (LAB), 2020 WL 4435416 (S.D. Cal. Aug. 3, 2020)...........7

*Estate of Serna v. Cnty. of San Diego*,
No. 20 Civ. 02096 (LAB), 2022 WL 827123 (S.D. Cal. Mar. 8, 2022) .............7

*Sonora Diamond Corp. v. Superior Ct. of Tuolumne*,
83 Cal. App. 4th 523 (Ct. App. 2000) .............................................8, 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ......................................12, 15

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008) ...........................................................11

*Upper Deck Co. v. Panini Am. Inc.*,
533 F. Supp. 3d 956 (S.D. Cal. Apr. 13, 2021) ...................................7

*Vashisht-Rota v. Ottawa Univ.*,
No. 20 Civ. 00959 (TWR), 2020 WL 6544708 (S.D. Cal. Nov. 6, 2020) .........12

*Wady v. Provident Life & Accident Ins. Co. of Am.*,
216 F. Supp. 2d 1060 (C.D. Cal. 2002) ...............................................8

*Walden v. Fiore*,
571 U.S. 277 (2014)......................................................................25

*Y.I. v. Cnty. of San Diego*,
No: 20 Civ. 00588 (LAB), 2021 WL 4428947 (S.D. Cal. Sept. 27, 2021)..........7

*In re Yahoo Mail Litig.*,
 7 F. Supp. 3d 1016 (N.D. Cal. 2014)...................................................................7

**Statutes**

Cal. Corp. Code § 16202(a) ...............................................................................19

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................16

Fed. R. Civ. P. 9(b) ..............................................................................................9

Fed. R. Civ. P. 12(f).............................................................................................23

Fed. R. Civ. P. 17(b) ...........................................................................................18

Fed. R. Civ. P. 23(c)(1)........................................................................................23

Fed. R. Evid. 201(b).............................................................................................7

**Other Authorities**

B.E. Witkin, *Summary of California Law, Ch. XII, § 28* (11th ed., Witkin
 Library 2017) (2020) .........................................................................................19

Restatement (Third) of Torts: Liab. for Econ. Harm § 1(1) (Am. L. Inst.
 2020) .................................................................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES

**PRELIMINARY STATEMENT**

The technologies discussed in the First Amended Complaint are cutting-edge, but the legal principles that doom Plaintiffs' case are simple, well-worn, and controlling.   When examining whether a negligence claim can survive past the pleading stage, "courts across the country have rejected recovery for purely economic losses stemming from made-made calamity."   *S. California Gas Leak Cases v. Superior Ct. of Los Angeles*, 7 Cal. 5th 391, 403 (2019).  Here, all Plaintiffs allege are economic losses stemming from alleged negligence.  The law is clear: dismissal is appropriate.

Plaintiffs are users of open-source software on the internet, who – together with the defendants in this case – were victims of a hack on that software, executed by malicious actors who stole some of their digital assets.  Tom Bean, Kyle Kistner, bZeroX LLC, and Leveragebox LLC (the "Leveragebox Defendants") had nothing to do with this crime, aside from being victimized by it themselves.  But Plaintiffs nevertheless filed this putative class action against them, alleging a single claim for negligence, and demanding reimbursement for their economic losses.   Because Plaintiffs do not know who the actual hackers are, they blame others – regardless of whether those "others" owed Plaintiffs any duty of care or not.

In this case, the Leveragebox Defendants owed no such duty of care. The Leveragebox Defendants are companies and persons who participated in creating an open-source, publicly-available web-based interface that allowed Plaintiffs to access software on the internet known as the bZx Protocol (the "Protocol").  Importantly, however, the Leveragebox Defendants do not (and did not at the time of the hack) operate the Protocol.  The Leveragebox Defendants never had custody of Plaintiffs' assets.  Plaintiffs have no relationship with the Leveragebox Defendants (and never did).  They are all complete strangers to each other.

Nevertheless, Plaintiffs believe that the Leveragebox Defendants, among innumerable others, are somehow legally responsible for making Plaintiffs whole.

To get there, Plaintiffs assert some opaque and inconsistent theories – either that the Leveragebox Defendants were themselves negligent, or that they allegedly supervised a third-party who was negligent, or they held the same digital asset as third-parties who allegedly supervised someone who was negligent. Plaintiffs' legal theories are the legal equivalent of throwing spaghetti against the wall. But none of the strands stick: the law of negligence does not transfer the risk of economic loss that Plaintiffs knowingly took on by transacting on the Protocol from themselves to the Leveragebox Defendants.

This case should be dismissed on various independent grounds. First, Plaintiffs' claims against Bean and Kistner individually are meritless attempts to evade the corporate protections afforded by their limited liability companies, bZeroX LLC and Leveragebox LLC. The Complaint is devoid of allegations that Bean and Kistner did anything but act within the scope of their employment, making any corporate-veil piercing inappropriate. Bean and Kistner, as individuals, should be dismissed.

Second, Plaintiffs' claims are squarely barred by the Terms of Use to which they necessarily assented when they accessed the Protocol through Fulcrum, a website operated by Leveragebox LLC. Those Terms of Use prohibit Plaintiffs from bringing claims against Leveragebox LLC, its employees, and its affiliates for any kind of damages, including those that arise from negligence. Moreover, far from taking on a duty to the Plaintiffs, in those Terms of Use Leveragebox LLC squarely announced to the world – including the Plaintiffs – that they were not taking on such duties.

Third, Plaintiffs' negligence claim is barred by the economic loss doctrine. Monetary losses flowing from a financial transaction "gone awry" are not the domain of negligence. Such claims are prohibited unless a plaintiff can allege a "special relationship" between it and the defendant. Here, the Complaint confirms that no "special relationship" between the parties in fact existed. Indeed, Plaintiffs

and the Leveragebox Defendants have <u>no</u> relationship to one another.  bZeroX LLC developed the bZx Protocol before relinquishing it over to others; Leveragebox LLC designed a publicly-available website that Plaintiffs unilaterally elected to use to access the protocol; and Kistner and Bean were the managers of those companies.  If a "special relationship" exists between the parties here, then it would be hard to imagine a case where it does not – a perverse result that is expressly disavowed by the law.  Plaintiffs' legal theory would erode the economic loss doctrine into nothing.

<u>Fourth</u>, Plaintiffs – recognizing that they allege no facts that would create a particular duty owed by the Leveragebox Defendants to Plaintiffs – instead make an outrageous claim that they are "partners" with others who purportedly did.  Plaintiffs' contention that the Leveragebox Defendants intentionally agreed to form or join a general partnership with Plaintiffs (whom they have never met, and had no idea existed), or more generally anyone and everyone who held the governance tokens for the bZx protocol, is not plausible on its face, and the allegations in the Complaint do not support the legal elements of a general partnership.  Furthermore, because Plaintiffs fail to allege the existence of a partnership to which Bean belonged, the Court lacks personal jurisdiction over Bean, who is a resident of Georgia and is not alleged to have any other connections to California.

<u>Finally</u>, Plaintiffs' class action allegations must be stricken, because under Plaintiff's convoluted partnership theory, Plaintiffs themselves are part of the partnership, introducing irreconcilable class conflicts.  Indeed, if this case were (somehow) to survive a motion to dismiss on the theory that all BZRX token holders or all participants in the protocol are general partners, Plaintiffs are just as liable to the rest of their "partners" as the Leveragebox Defendants are.  Plaintiffs' counsel, looking for publicity as well as deep pockets, bill this case as a "first-of-its-kind lawsuit."[1]  It is not.  There is nothing groundbreaking about a cynical cash grab advancing unsupportable legal theories.  Similar cases are dismissed daily.

---

[1] *See* https://gerstein-harrow.com/crypto (advertising "first-of-its-kind lawsuit").

MEMORANDUM OF POINTS AND AUTHORITIES

# RELEVANT FACTS

A. *The Protocol*

The bZx protocol (the "Protocol") is computer software that exists on the internet. It allows users to unilaterally engage in transactions using cryptocurrencies. *See* Am. Compl. (ECF 21), the "Compl." ¶¶ 1, 42. Versions of the Protocol exist on three separate blockchains: Ethereum, Polygon, and Binance Smart Chain ("BSC"). Compl. ¶ 45. A blockchain is a network system that "publicly records" cryptocurrency transactions. Compl. ¶ 37. Users can elect to interact with the Protocol on any one of the three blockchains. Compl. ¶ 37. The Protocol is one of innumerable examples of decentralized finance software with which users can unilaterally and permissionlessly engage in financial-type transactions, without traditional financial intermediaries or counterparties, such as banks. Compl. ¶ 40.

The users in this case accessed the Protocol by visiting a website known as Fulcrum. Compl. ¶ 45. Fulcrum is not the same thing as the Protocol; it is merely a website through which users can interact with the Protocol software. *Id.*

Transactions that take place on the Protocol are very different than traditional financial activity. One principal difference is that users only interact with the software itself; they do not interact, directly or indirectly, with other users, the developers of the Protocol software, or anyone who exercises control over the software. *See generally* Compl. ¶¶ 35-40. Additionally, users' transactions are non-custodial, which means that no third-party <u>ever</u> takes custody of users' assets, not even the Protocol itself; users maintain custody of their own assets at all times. *See generally* Compl. ¶¶ 39, 50. Finally, the Protocol software acts autonomously. This means that users' interactions with the Protocol are governed by the rules of the software, and users do not need permission from anyone to interact with the Protocol. *See generally* Compl. ¶¶ 35-40.

Since August 2021, the software comprising the Protocol has been under the

MEMORANDUM OF POINTS AND AUTHORITIES

control of the community of BZRX token holders.  Compl. ¶ 68.  BZRX is a cryptocurrency, and holders of BZRX are afforded governance rights to the Protocol.  Compl. ¶ 41.  For instance, BZRX token holders can make certain limited changes to the Protocol, and propose actions that the community of BZRX token holders can take.  Compl. ¶¶ 41, 63, 69.

### B.    *The Leveragebox Defendants*

Defendants Leveragebox LLC ("Leveragebox") and bZeroX LLC are Delaware limited liability companies.  Compl. ¶¶ 28-29.  bZeroX LLC originally developed the Protocol, but turned over control of the Protocol to the community of BZRX token holders in August of 2021.  Compl. ¶¶ 29, 67, 79.  Leveragebox operated Fulcrum, a website through which users could interact with the Protocol. Compl. ¶¶ 28, 43, 45, 78.

Defendants Kistner and Bean are individuals, and the sole members and managers of Leveragebox and bZeroX LLC.  Compl. ¶ 67.  The Complaint contains no specific allegations concerning Kistner's or Bean's activity in relation to the Protocol, aside from their involvement managing Leveragebox and bZeroX LLC. *See, e.g.*, Compl. ¶¶ 72-73.

Plaintiffs are individuals who allege that their digital assets were stolen by the perpetrators of the hack on the Protocol.  Compl. ¶¶ 3-21.  All of the Plaintiffs were also BZRX token holders.  Compl. ¶ 64.

### C.    *The Hack Perpetrated On Defendants And The Protocol's Users*

On November 5, 2021, a "malicious actor" hacked the Polygon and BSC deployments of the Protocol.  Compl. ¶¶ 52-53.  Plaintiffs allege that a "malicious actor," masquerading as a trusted entity, sent a "bZx developer ... a phishing email ... disguised as a legitimate email attachment, which then ran a script on his Personal Computer."  Compl. ¶¶ 52-53.  The "malicious actor" thus gained access to the private keys for the Polygon and BSC deployments of the Protocol, as well as the contents of that unnamed developer's personal cryptocurrency wallet.  Compl. ¶ 54.

The "malicious actor" used the keys to steal the Protocol's assets on the Polygon and BSC blockchains.  Compl. ¶ 54.

Unlike the deployment on the Polygon and BSC chains, the Ethereum deployment of the Protocol – the administrative private keys for which were not held by the hacked individual, but rather in a smart contract controlled by BZRX token holders – was not impacted at all.  Compl. ¶ 59.  Although Plaintiffs assert at one point that "the developer was working for the bZx DAO at the time of the hack," *see* Compl. ¶ 56, Plaintiffs assert elsewhere that the administrative private keys to the BSC and Polygon deployments of the Protocol had "not yet been transferred to the DAO" and that "the BSC and Polygon Deployment did not have the protection of the DAO."  *See* Compl. ¶ 58.

Following the theft, certain BZRX token holders put to a vote, among other BZRX token holders, a proposal to compensate the victims of the crime.  Comp. ¶¶ 63-65.  BZRX token holders, which included Plaintiffs, had the opportunity to vote in favor of or against the proposal (although Plaintiffs conspicuously and specifically avoid stating how they voted).  Compl. ¶ 63.  The proposal passed.  *Id.*

D.   *The Fulcrum Terms Of Use To Which Plaintiffs Agreed*

Users of Fulcrum, including Plaintiffs, agreed with Leveragebox to be bound by the Terms of Use of the Fulcrum product.   The Terms of Use are published through the Fulcrum website.  *See* Declaration of Jason Gottlieb in Support of Motion, dated July 18, 2022 ("Gottlieb Decl."), at ¶¶ 4-5.  The Terms of Use are marked in green, hyperlinked text.  *See id.* at Ex. 2.

Section 14.3 of the Terms of Use limit the liability for Leveragebox and its "employees, officers, directors, [and] affiliates" for "damages of any kind, under any legal theory," including a "loss of assets," and "whether caused by tort (including negligence) ...."  *See* Gottlieb Decl. at Ex. 3.  By using Fulcrum, Plaintiffs also agreed that their use of Fulcrum and the Protocol was "strictly at [their] own risk," and that no party made any warranties or representations related to, among other

things, the "security" of Fulcrum or the Protocol.  *See id.* at Ex. 3.[2]

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Y.I. v. Cnty. of San Diego*, No. 20 Civ. 00588 (LAB) (DEB), 2021 WL 4428947, at *2 (S.D. Cal. Sept. 27, 2021).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 555); *see also Kappouta v. Valiant Integrated Servs., LLC*, No. 20 Civ. 01501 (TWR) (BGS), 2021 WL 4806437, at *2 (S.D. Cal. Oct. 14, 2021).  Hence, allegations against a group of defendants, generalized for the group, are insufficient to satisfy the pleading standards.  *See Twombly*, 550 U.S. at 565 n.10; *Estate of Serna v. Cnty. of San Diego*, No. 20 Civ. 02096 (LAB) (MSB), 2022 WL 827123, at *2 (S.D. Cal. Mar. 8, 2022); *Sekerke v. City of Nat'l City*, No. 19 Civ. 01360 (LAB) (MSB), 2020 WL 4435416, at *5 (S.D. Cal. Aug. 3, 2020), *report and recommendation adopted* 2021 WL 211084 (Jan. 20, 2021).

---

[2] The Court may consider the bZx.network and Fulcrum.trade websites, including the Terms of Use, because those sites are extensively cited, referred to, and relied upon by Plaintiffs in the Complaint, and hence incorporated by reference.  *See, e.g.*, Compl. ¶¶ 42-50; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). *Upper Deck Co. v. Panini Am. Inc.*, 533 F. Supp. 3d 956 (S.D. Cal. Apr. 13, 2021); *Bassam v. Bank of Am.*, No. 15 Civ. 00587 (MMM) (FFMx), 2015 WL 4127745, at *6 (C.D. Cal. July 8, 2015).  The websites are also subject to judicial notice because they are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). *See, e.g., In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1025 (N.D. Cal. 2014) (*sua sponte* taking judicial notice of Yahoo's privacy policy and terms of use).

**ARGUMENT**

A.   *Plaintiffs Plead No Facts That Warrant Piercing The Corporate Veil To Hold Bean And Kistner Individually Liable*

Plaintiffs chide the defendants for participating in an informal association that lacks legal formalities, *see* Compl. ¶ 2, yet bring claims against Bean and Kistner individually for the conduct of their LLCs – which are duly organized under Delaware law, and afford Bean and Kistner limited liability.  *See* Compl. ¶¶ 28-29.

The only non-conclusory allegations alleging activity in which Bean and Kistner personally engaged are that they co-founded and managed Leveragebox and bZeroX LLC.  Compl. ¶ 67.  Plaintiffs plead no facts that would warrant piercing the corporate veil of those companies to hold Bean and Kistner individually liable for the companies' alleged conduct.

A limited liability company is "regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations."  *See Sonora Diamond Corp. v. Superior Ct. of Tuolumne*, 83 Cal. App. 4th 523 (Ct. App. 2000).  Piercing the "corporate veil" of a company to impose liability on its members for the company's action is extraordinary relief, only applied when there is "an abuse of the corporate privilege," or "the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose."  *Id.*; *see also Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066-67 (C.D. Cal. 2002).

Even if an abuse of the corporate privilege were pleaded, a plaintiff must also allege that (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and (2) "an inequitable result" if the at-issue acts are considered those of the corporation.  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538; *Wady*, 6 F. Supp. 2d at 1066.

Here, the Complaint contains no allegations – none – that warrant piercing the

corporate veils of Leveragebox or bZeroX LLC to impose liability on Bean and Kistner.  Plaintiffs merely conclusory allege that Leveragebox and bZeroX LLC "appear to have been largely controlled by co-founders [Bean and Kistner]," *see* Compl. ¶ 67, and that they "participated in the decisionmaking of the bZx protocol and its successor the Ooki protocol," *see* Compl. ¶¶ 72, 73.  These allegations do not ascribe any conduct to Bean and Kistner individually or outside the scope of their roles as members of Leveragebox and bZeroX LLC, nor any facts that even remotely call into question the legitimacy of the companies' corporate forms, or warrant disregarding them.

The Complaint does not – because it cannot – allege that the companies were mere shells used to effect fraud; that individual and corporate assets were commingled; that there was inadequate capitalization or the companies, that there was a disregard of corporate formalities; or any other circumstances warranting the application of a doctrine that is an "extreme remedy, sparingly used." *Sonora* at 539; *see also* Fed. R. Civ. P. 9(b).

Because the allegations do not spell out any claim against Bean and Kistner individually, they are legally entitled to the protections of the limited liability shields of the LLCs of which they are members.  Accordingly, Plaintiffs' claim against Bean and Kistner individually should be dismissed.

B.      *Plaintiffs' Claim Is Barred By The Terms Of Use*

When a user of a website assents to particular terms, the user agrees to, and is bound by, those terms.  Here, Plaintiffs accepted Leveragebox's Terms of Use by accessing Fulcrum, which forecloses their claims against the Leveragebox Defendants.  *See* Gottlieb Decl., Ex. 3.

Here, Plaintiffs entered into a binding agreement with Leveragebox when they concededly used Fulcrum to access the Protocol.  *See* Compl. ¶ 45.  The Terms of Use are clearly marked in green in obviously hyperlinked text on the Fulcrum homepage, which users necessarily navigated through to access the Protocol.  *See*

Gottlieb Decl. at Ex. 2 (at bottom).  Agreements formed in this manner are valid and binding.  *See Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04 Civ. 04825 (JW), 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005).

Because Plaintiffs are bound by the Terms of Use, their claims in this case are foreclosed by the agreement.  The Terms of Use state, among other things, that

> IN NO EVENT WILL THE COMPANY, ITS EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, OR AFFILIATES BE LIABLE FOR DAMAGES OF ANY KIND, UNDER ANY LEGAL THEORY, ARISING OUT OF OR IN CONNECTION WITH ... [the Protocol] ... OR ... LOSS OF ASSETS ... WHETHER CAUSED BY TORT (INCLUDING NEGLIGENCE) ... EVEN IF FORESEEABLE.  *See* Gottlieb Decl. at Ex. 3.

Plaintiffs' claim for "negligence" based on Plaintiffs' "loss of assets" fits squarely within the type barred by the Terms of Use, requiring dismissal.  Furthermore, because the Terms of Use to which Plaintiffs agreed also bar claims against Leveragebox's "employees, agents, officers, directors, or affiliates," Plaintiffs' claim against bZeroX LLC, Kistner, and Bean are similarly foreclosed.

C.    *The Negligence Claim Fails As A Matter Of Law*

Although Plaintiffs' legal theory is opaque, it appears that they assert that the Leveragebox Defendants themselves, among thousands of others, owed Plaintiffs some generalized duty to prevent their economic losses.  <u>First</u>, Plaintiffs suggest, the "bZx protocol and its partners," which Plaintiffs alleges includes the Leveragebox Defendants themselves, owed Plaintiffs a duty to "maintain the security of the funds deposited using the bZx protocol."  *See* Compl. ¶ 99.  <u>Second</u>, Plaintiffs assert that "the bZx protocol and its partners" owed Plaintiffs a duty to "supervise developers." *See* Compl. ¶ 100.  <u>Third</u>, Plaintiffs allege that the Leveragebox Defendants must "answer as *respondeat superior*" for the "unnamed developer" who was the victim of the hack.  *See* Compl. ¶ 101.

Plaintiffs' negligence claim fails because their allegation that the Leveragebox Defendants (and thousands of others across the globe) owed them such legal duties

is factually and legally specious.  Recovery for negligence requires a duty of care. Here, on the facts alleged, there is no duty, and no "special relationship" giving rise to any duty – and thus, as a matter of law, no negligence.

To plead a claim for negligence, Plaintiffs must sufficiently allege (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach, and (4) the plaintiff's injury.  *See Diaz v. Intuit, Inc.*, No. 15 Civ. 01778 (EJD), 2018 WL 2215790, at *4 (N.D. Cal. May 15, 2018).  The question of the existence of a legal duty of care is a question of law for a court.  *Id*.

In this case, Plaintiffs seek only the recovery of their economic losses.  *See* Compl. ¶¶ 99-101 (seeking "loss of funds").  However, parties have no general duty to protect others against purely economic losses, a principle referred to as the economic loss doctrine.  *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 1(1) (Am. L. Inst. 2020).  "Liability in negligence for purely economic losses is the *exception*, not the rule.'"  *S. California Gas Leak Cases v. Superior Ct. of Los Angeles*, 7 Cal. 5th 391, 400 (2019) ("*Gas Leak*") (internal citations and quotations omitted; *quoting Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26 (1998) (emphasis added)); *see also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008).  Economic losses mean "pecuniary or commercial loss that does not arise from actionable physical, emotional or reputational injury to persons or physical injury to property."  *Gas Leak*, 7 Cal.5th at 398.

"Purely economic losses flowing from a financial transaction gone awry," in particular, "are primarily the domain of contract and warranty law or the law of fraud, rather than of negligence."  *Id*. at 402 (citation and quotation marks omitted). The economic loss doctrine is designed to prevent against unlimited liability.  *See* Rest.3 d Torts, Econ. Harm, § 7, cmt. b.  It applies even where, such as here, a plaintiff does not interpose a claim based in contract.  *See e.g.*, *Gas Leak*, 7 Cal. 5th at 396; *see also* 18 Cal. App. 5th 581, 584-855 (Ct. App. 2017).  It "was created to prevent 'the law of contract and the law of tort from dissolving one into the other.'"

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014); *see also Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 78 (2019) (defendant was not in a special relationship where relationship with plaintiff was too attenuated); *Diaz*, 2018 WL 2215790 at *5 ("courts have consistently refused to impose a duty of care in the context of financial transactions involving fraud and identity theft.").

The "primary exception" to the economic loss doctrine is when there is a "special relationship," which is "in place when the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." *See Gas Leak*, 27 Cal. 5th at 400. Courts generally consider six factors in determining whether a special relationship is present that permits recovery for pure economic losses: (i) "the extent to which the transaction was intended to affect the plaintiff," (ii) "the foreseeability of harm to the plaintiff," (iii) "the degree of certainty that the plaintiff suffered injury," (iv) "the closeness of the connection between the defendant's conduct and the injury suffered," (v) "the moral blame attached to the defendant's conduct," and (vi) "the policy of preventing future harm." *See id.* at 401 (citing factors); *Vashisht-Rota v. Ottawa Univ.*, No. 20 Civ. 00959 (TWR) (KSC), 2020 WL 6544708, at *5 (S.D. Cal. Nov. 6, 2020) (applying factors to determine no negligence cause of action existed).

Here, Plaintiffs allege only economic losses, but utterly fail to allege any facts from which it can be inferred that the Leveragebox Defendants (*see* Compl. ¶¶ 99-100), the "unnamed developer working on behalf of bZx" (*see* Compl. ¶ 101), or anyone else with whom the Leveragebox Defendants are jointly liable owed them a duty of care to protect against such generalized economic losses.

### 1. *Bean And Kistner Lack a Duty of Care to Plaintiffs*

As an initial matter, the only allegations interposed by Plaintiffs against Bean and Kistner are that they controlled bZeroX LLC and Leveragebox, *see* Compl. ¶ 67, and supposedly "participated in decisionmaking of the bZx protocol and its

MEMORANDUM OF POINTS AND AUTHORITIES

successor the Ooki protocol, *see* Compl. ¶¶ 72-73.  Plaintiffs do not allege a single fact from which the Court could plausibly infer the existence of a "special relationship" between Bean and Kistner personally, on the one hand, and Plaintiffs, on the other – or any relationship at all.  Plaintiffs' generalized allegations are legally insufficient to impose a legal duty between strangers to prevent economic losses.

### 2.  *bZeroX LLC And Leveragebox Lack a Duty of Care to Plaintiffs*

Plaintiffs' allegations against bZeroX LLC and Leveragebox fare no better. Plaintiffs and the companies also had no relationship with one other; no transaction intended to affect the plaintiff existed between the parties.  The only conduct that Plaintiffs allege against bZeroX LLC was that it initially developed the Protocol. Yet, at the time of the hack, bZeroX LLC no longer controlled the Protocol, having relinquished control of the software over to BZRX token holders.  *See* Compl. ¶¶ 29, 68.  Leveragebox, for its part, only operated a website through which Plaintiffs unilaterally and permissionlessly accessed the Protocol, which website, Plaintiffs concede, is <u>not the same thing</u> as the Protocol itself (which was the software that was hacked).  There was no relationship between the companies and Plaintiffs.

There was also no connection at all between Leveragebox's operation of *Fulcrum* (a website) and the hack on the *Protocol* (the software).  *See* Compl. ¶¶ 28, 45.  Nor was there any connection, let alone a close one, between bZeroX LLC and Leveragebox (on one hand) and the Plaintiffs (on the other).

Further underscoring the lack of a "special relationship" is that Plaintiffs accessed the Protocol at their own discretion and volition, and there was no transaction between Defendants and Plaintiffs for which Plaintiffs were the intended beneficiary as required for a special relationship.  *See Andrews v. Plains All Am. Pipeline, L.P.*, No. 15 Civ. 04113 (PSG) (JEMX), 2019 WL 6647930, at *4 (C.D. Cal. Nov. 20, 2019) (no special relationship where there was no intended transaction between the parties).  Plaintiffs did not have, and did not need, the assent of bZeroX

LLC or Leveragebox to access the Protocol.  Plaintiffs' had no account or any other direct contact, let alone privity, with the companies.  Moreover, the Protocol was open source, and Plaintiffs had every opportunity to review the Protocol's computer code before accessing it.  The Leveragebox Defendants did not possess or take custody of Plaintiffs' funds, at any point.  Neither bZeroX LLC nor Leveragebox could unilaterally make changes to the Protocol's code.  These allegations do not create a "special relationship" between Plaintiffs and the companies, so as to imply a duty to protect against generalized economic losses.  *See Gas Leak*, 7 Cal. 5th at 401; *Barenborg*, 33 Cal. App. 5th at 78 (national organization that had no ability to monitor day-to-day activities at local chapter was not in a special relationship with the plaintiff).

Also belying the plausibility of Plaintiffs' claim is Leveragebox's disclaimers in its Terms of Use, which were prominently displayed on Fulcrum.  *See* Gottlieb Decl. at Exs. 2-3.  The Terms of Use informed Plaintiffs that, among other things, Leveragebox and its affiliates "expressly disclaim any and all liability and responsibility arising from your use thereof," and that Plaintiffs accessed the Protocol "solely and exclusively at [their] own risk," and without any "warranties of any kind," including as to the "security" of the Protocol.  *See id.* at Ex. 3; *Damner v. Facebook Inc.*, No. 20 Civ. 05177 (JCS), 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020)  (no cause of action for negligence where foreclosed by the terms of use).

To the extent that Plaintiffs suggest that, notwithstanding the terms of service, certain representations on the bZx website (*see* Compl. ¶¶ 46-50) could support a finding of a "special relationship," such argument lacks merit.  The statements concerning the "security" of the Protocol simply convey facts about the Protocol. Nor do they bear on the Leveragebox Defendants' disclaimers of responsibility.  *See* Gottlieb Decl. at Ex. 3.  These are not statements by Defendants that evince an intent to enter into a bilateral transaction that would bear a special relationship – and no such transactions could possibly occur, given the architecture of the Protocol.  *See*

1   *Andrews*, 2019 WL 6647930, at \*4 ("for a special relationship to exist, the plaintiff
2   must be an 'intended beneficiary of a particular transaction'").

3       *Diaz v. Intuit* is instructive.  *See* 2018 WL 2215790.  There, the plaintiff
4   suffered an identity hack whereby fraudulent tax returns in his name were filed on
5   TurboTax, an Intuit company.  At no point was Diaz a customer of TurboTax, just as
6   Plaintiffs here were never "customers" of the Leveragebox Defendants.  The District
7   Court dismissed the plaintiff's negligence claim against Intuit because Plaintiffs
8   failed to plead a special relationship.  *Id.* at \*5.

9       *In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
10   though decided before *Gas Leak*, is also on point.  That action arose out of a
11   criminal intrusion into Sony's computer network system used to provide online
12   gaming and Internet connectively via an individual's personal computer.  *See* 996 F.
13   Supp. 2d 942, 942 (S.D. Cal. 2014).  Plaintiffs sued Sony for economic losses under
14   a negligence theory alleging, among other things, that Sony breached a duty to
15   "exercise reasonable care in safeguarding and protecting" the putative plaintiff
16   class's personal information, including by "failing to implement proper procedures"
17   and failing to "design, implement, maintain, and test Sony's security system in order
18   to ensure Plaintiffs' [personal information] was adequately secured and protected."
19   *Id.* at 966.  The court dismissed plaintiffs' negligence claim, finding that they failed
20   to allege a special relationship with Sony "and therefore, negligence is the wrong
21   legal theory on which to pursue recovery for Plaintiffs' economic losses."  *Id.* at
22   969, 973.  The same result is warranted here.  *See also Gardiner v. Walmart Inc.*,
23   No. 20 Civ. 04618 (JSW), 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) (finding no
24   special relationship); *Michael v. Honest Co., Inc.*, No. 15 Civ. 07059 (JAK) (AGRx),
25   2016 WL 8902574, (C.D. Cal. Dec. 6, 2016) (same).

26       The dearth of factual content in the Complaint supporting a special
27   relationship is underscored by Plaintiffs' improper group pleading, inherent
28   contradictions, and weaponized generalizations.  Plaintiffs repeatedly conflate the

1  defendants with one another, the thousands of other BZRX token holders, and all

2  other purported "partners," without asserting what roles, if any, the Leveragebox

3  Defendants themselves had with respect to the management of the Protocol as it

4  relates to the harm that Plaintiffs allegedly suffer, a fatal pleading deficiency.

5  Plaintiffs' conclusory allegation that "the bZx protocol" – which is nothing

6  more than computer code – and its "partners" – which include thousands and

7  thousands of users of that computer code, all over the world (*see* Compl. ¶¶ 99-101)

8  – owed Plaintiffs a duty does not suffice to put the Leveragebox Defendants on

9  notice of the elements of Plaintiffs' claim specifically as against each of them, and

10  hence does not comply with Fed. R. Civ. P. 8.  *See Lopez v. Wells Fargo Bank*, No.

11  16 Civ. 00811 (AJB) (DHB), 2017 WL 1336764, at *3 (S.D. Cal. Apr. 5, 2017)

12  (claim fails because "Plaintiff makes conclusory accusations of violations without

13  providing factual support of what actions each Defendant took.").

14  Finally, Plaintiffs' theory that the Leveragebox Defendants failed to manage

15  the security of the Protocol and supervise individuals doing work related to the

16  Protocol (*see* Compl. ¶ 101) is also legally deficient for the additional and

17  independent reason that the allegations in the Complaint are contradictory.  For

18  instance, Plaintiffs allege, in one paragraph, that the individual whose private

19  administrative keys were hacked worked for bZeroX LLC.  *See* Compl. ¶ 55.  Only

20  one paragraph later, they allege that the "bZx DAO" (whatever Plaintiffs mean by

21  that), and not bZeroX LLC, employed the individual who was hacked.  *See* Compl.

22  ¶ 56.  Elsewhere, Plaintiffs allege, on the one hand, that the "bZx DAO" controlled

23  the Protocol at the time of the hack (*see* Compl. ¶¶ 68-69), but on the other hand,

24  that bZeroX LLC – and not the "bZx DAO" – controlled the Polygon and BSC

25  deployments of the Protocol, which were the only ones hacked (*see* Compl. ¶ 58).

26  Plaintiffs' collective and contradictory pleading violates Fed. R. Civ. P. 8(a), which

27  requires, at a minimum, that a complaint give each defendant fair notice of what the

28  plaintiff's claim is and the ground upon which it rests.  *See Lopez*, 2017 WL

1336764, at *3; *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

The Complaint does not set forth facts alleging that any particular Leveragebox Defendant owed Plaintiffs a duty of care to protect them against economic losses. The Complaint against them should be dismissed.

### 3. *No Other Potential "Partners" Of The Leveragebox Defendants Possibly Owed Plaintiffs A Duty*

Plaintiffs' alternative theory is that even if the Leveragebox Defendants themselves did not owe them a legal duty, then they were "partners" in an organization that did. For the reasons set forth *infra* in Section D, no such "partnership" for which the Leveragebox Defendants could be jointly and severally liable exists. Even if it did, however, for the same reasons that Plaintiffs do not allege that the Leveragebox Defendants owed them a legal duty, they do not sufficiently allege that the "bZx protocol and its partners" owed any duty to Plaintiffs.

### 4. *Plaintiffs Allege No Breach*

Even if the Leveragebox Defendants owed Plaintiffs any duty – which they did not – Plaintiffs do not allege facts plausibly stating that the Leveragebox Defendants breached that purported duty.

Plaintiffs assert that the Leveragebox Defendants failed to enact "procedures such that a phishing attack on a single developer" could not result in a "multi-million dollar theft." *See* Compl. ¶¶ 99-100. As a matter of law, however, no alleged facts suggest that the Leveragebox Defendants acted unreasonably. The Complaint alleges that the administrative keys to the Polygon and BSC deployments of the Protocol were maintained by an individual who was the victim of a targeted criminal enterprise. *See* Compl. ¶¶ 52-58. There are no allegations as to what the individuals (or any defendant) should have done to comport with reasonable standards in the industry, and no allegations that the criminal attack would have been prevented if any particular steps had been taken. More is required to plead negligence than

MEMORANDUM OF POINTS AND AUTHORITIES

simply asserting that a hack occurred, and therefore people were negligent.  *See Razuki v. Caliber Home Loans, Inc.*, No. 17 Civ. 01718 (LAB) (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (dismissing negligence claim arising from data breach in part because plaintiff "could have identified what made Caliber's security measures unreasonable by comparison to what other companies are doing" – but did not).

### D.   BZRX Token Holders Are Not "Partners" With One Another

Since Plaintiffs plead no facts suggesting that the Leveragebox Defendants themselves owed Plaintiffs a duty that they breached, they instead assert that the Leveragebox Defendants – along with potentially thousands of other named and unnamed actors from everywhere around the world – were members of some amorphous and oft-changing "general partnership"[3] that either itself owed duties to Plaintiffs (*see* Compl. ¶¶ 99-100), or is responsible under *respondeat superior* (*see* Compl. ¶ 101) for the Protocol.  Plaintiffs allege that all of those partners are partners simply by virtue of the fact that they held BZRX tokens – even though that category includes Plaintiffs themselves.  *See* Compl. ¶¶ 67-71, 99-101.  If such a partnership exists, Plaintiffs assert, then the Leveragebox Defendants must be legally responsible to them for that organization's negligence.  Left unspoken is why the Plaintiffs here would have no such similar duty to any of their other "partners," even though the exact same theory would apply to them equally.

Plaintiffs' theory is, to put it politely, far-fetched.[4]  Plaintiffs' contention that

---

[3] For many of the same reasons set forth in this section, it is far from clear that the collective of BZRX token holders, which Plaintiffs' refer to as the "bZx DAO" and the "Ooki DAO", is even a juridical entity that has the capacity to sue or be sued. *See* Fed. R. Civ. P. 17(b).

[4] Plaintiffs' attorneys in this case have asserted this same amorphous "general partnership" theory in another pending case, *Kent v. PoolTogether*, No. 21-CV-06025-FB-CLP (E.D.N.Y.).  This theory appears to be the pet project of a plaintiffs' law firm looking to manufacture cases against entities with tangential involvement,

the Leveragebox Defendants intentionally agreed to form or join a general partnership, together with anyone and everyone who held BZRX tokens, to run the Protocol as a for-profit business is not factually alleged, nor could it be – it is simply not "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).  No court has held that individuals who merely hold digital assets are somehow operating as a general partnership with all other holders of that asset, and no court has held that all users of an open-source software protocol are somehow operating as a general partnership with all other users of that software.

The burden of proving a partnership's existence lies upon the party asserting its existence.  *Jones v. Goodman*, 57 Cal. App. 5th 521, 531 (2020).   Under California law, an "association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership."   Cal. Corp. Code § 16202(a).   Yet, "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the user of the property." § 16202(c)(1).   Courts look to the surrounding circumstances and intent of the parties to determine whether a partnership exists.  *In re Marriage of Geraci*, 144 Cal. App. 4th 1278, 1292-93 (2006).

Here, Plaintiffs fail to allege the elements of a general partnership with which the Leveragebox Defendants intended to associate.

First, Plaintiffs offer no factual allegations about any transactions or specific activity that suggest the Leveragebox Defendants intended to become co-owners to operate the Protocol for profit (if "ownership" of the open-source software Protocol were even possible).  *See* B.E. Witkin, *Summary of California Law, Ch. XII, § 28* (11th ed., Witkin Library 2017) (2020) ("The intention of the parties to carry on a

---

but deeper pockets, simply by calling them "partners" in some general partnership. This particular theory may be "first of its kind," but that does not give it merit.

definite business as coowners is ultimately the test of partnership." (citing § 16202(a))); *Rivlin v. Levine*, 195 Cal. App. 2d 13, 21 (1961) ("In all general partnerships, and also in bone fide limited partnerships, there is the right of *delectus personarum*, the right to determine membership.").

Second, Plaintiffs' allegation that the purported partners agreed to "carry on as co-owners (of the bZx and Ooki DAOs, with shared control of the bZx and Ooki treasury funds, among other assets), of a business for profit (the bZx and Ooki protocols and related products built on them, with the profits being the right to funds held in the respective treasuries))*," see* Compl. ¶ 71, invokes legal conclusions, but alleges no facts. Conspicuously absent from the pleading are any examples of the Leveragebox Defendants exercising activity that reflects an intentional agreement to share profits and losses, which is a key factor in forming a partnership. *See Park*, 87 Cal. App. 3d at 564.

The party alleging that a partnership exists must demonstrate that partners intended to share the profits of the business and participated in the management of the business. *See Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2013). Sharing of profits alone is not enough; there should also be sharing of losses. *See Cislaw v. Southland Corp*., 4 Cal. App. 4th 1284, 1297-98 (Ct. App. 1992) ("The mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not make him a joint venture.") (internal citations and quotations omitted); *People v. Park*, 87 Cal. App. 3d 550, 564 (Ct. App. 1978) ("[I]t is well established that the essential elements of both a joint venture and partnership are a sharing of profits as well as losses and a right to joint management and control of the business"). And, the "sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived." § 16202(c)(2).

Here, the Complaint also contains no facts alleging how the alleged

MEMORANDUM OF POINTS AND AUTHORITIES

partnership makes a profit, or that they ever would or could share in losses. Plaintiffs have alleged speculation that BZRX token holders *could* share profits. But they fall far short of alleging that the alleged partners, let alone the Leveragebox Defendants themselves, *agreed* to share profits and losses (or actually did so). Critically, Plaintiffs allege no facts suggesting that defendants (let alone all BZRX token holders) agreed to bear any and all losses suffered by a partnership.

Third, Plaintiffs fail to assert any factual allegations that Leveragebox Defendants exercised control over the alleged partnership business. Key to finding a partnership is a degree of participation by the partners in the management and control of the business is a hallmark of a general partnership. *See Fredianelli*, 931 F. Supp. 2d at 1020 (holding plaintiff was not a partner because of "undisputed lack of control over management of the band."). "To participate to some extent in the management of a business is a primary element in partnership organization, and it is virtually essential to a determination that such a relationship existed." *Dickenson v. Samples*, 104 Cal. App. 2d 311, 315 (1951) (holding that parties did not intend to form a partnership or joint venture where there was no evidence of "any joint liability for debts and losses" or evidence that plaintiff had "any control or management of the factors influencing the net worth of the business."); *see also Fredianelli*, 931 F. Supp. 2d at 1020 (holding no partnership where party was not involved with management, even where the party received a share of the revenues).

Plaintiffs assert that the only means by which token holders can "driv[e] governance and decision making of the bZx platform" is for BZRX token holders to "both suggest and vote on governance proposals." *See* Compl. ¶ 69. Critically, however, Plaintiffs do not allege any facts suggesting that the Leveragebox Defendants (together, or individually) participated in the governance of the Protocol after August 2021, at the time of the hacking attack. *See* Compl. ¶ 79. These sparse allegations fall far short of pleading that the Leveragebox Defendants exercised joint control and management, as required for a general partnership.

Plaintiffs also concede that the community of BZRX token holders is decentralized; there are no allegations that any single member has the ability alone to make any changes to the Protocol.  *See* Compl. ¶ 69.  The number of BZRX token holders at any given is unknown, but presumably in the thousands, largely unknown to each other, in almost all cases unidentifiable, and each governed by the local laws of whatever jurisdiction in which they reside.   Each has varying degrees of involvement in the Protocol.  A person can hold a BZRX token for long durations, or for mere seconds.  There is not alleged to be any coordination among BZRX token holders.   Furthermore, BZRX tokens provide owners only some fraction of governance rights which relate to only a narrow set of parameters of the Protocol.  There are no allegations that BZRX token holders can generally manage the Protocol, like one would a business.  Indeed, Plaintiffs do not even allege that the Protocol is a business to be run.

 Finally, underscoring the implausible nature of Plaintiffs' allegations, the Complaint never actually defines who the general partners are, of which there may be thousands, or who they were at any relevant time.  It appears to suggest that anyone who "hold[s] the BZRX token" is a general partner, since only those who hold BZRX tokens can "control[]" the "bZx DAO."  *See* Compl. ¶ 69.  However, Plaintiffs do not allege that Kistner, Bean, bZeroX LLC, or Leveragebox themselves held BZRX tokens at any relevant times.  *See* Compl. ¶¶ 72-73, 78-79, 69, 71. Plaintiff's allegations provide no sensible basis at all to plead that the Leveragebox Defendants in this case are partners – but Plaintiffs themselves, or others, are not.

The contours of Plaintiffs' theory as to who and who does not fall within a partnership are opaque, but the implications are that every single individual or entity that holds a governance token, such as BZRX, is a member of a general partnership, and is thus susceptible to joint and several liability.  Plaintiffs ask this Court, on the basis of this pleading and as a matter of law, to find that each and every BZRX token holder plausibly could be a co-owner of a business with management authority and

MEMORANDUM OF POINTS AND AUTHORITIES

unlimited personal liability for any losses connected to the platform, and thus subject to full discovery into their potential liability. This radical expansion and alteration of long-standing principles of partnership law should not be countenanced.

### E.   *The Class Allegations Should Be Stricken*

A court may strike class allegations pursuant to Rule 12(f) where the plaintiffs are not "adequate" to represent the putative class, and such facts are either apparent from the pleadings or not dispute. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009). Rule 23(c)(1) directs district courts to determine "as soon as practicable," including at the motion to dismiss stage, whether the proposed class satisfies Rule 23's requirements. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. A proposed class representative must have no interests antagonistic to the interests of other class members. *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 549, 556 (N.D. Cal. 1988) (plaintiffs were not adequate representations because of "intra-class conflicts").

Here, Plaintiffs' single cause of action against the defendants is based on a general partnership theory under the premise that BZRX token holders participate in the operation of the Protocol as a business for profit. *See* Compl. ¶¶ 67-71. Plaintiffs' proposed class purports to include "all people who delivered cryptocurrency tokens to the bZx protocol and had any amount of funds stolen in the theft reported on November 5, 2021, except for people whose only cryptocurrency stolen was the BZRX token." *See* Compl. ¶ 80. This putative class, however, necessarily includes myriad users who held BZRX tokens and who can participate in the governance of the Protocol. This group of the putative class members are, according to Plaintiffs' pleaded general partnership theory, allegedly just as liable to Plaintiffs as to the defendants. The Plaintiffs themselves, who allege that they held BZRX tokens, are also equally liable under the Plaintiffs' own general partnership

theory. A class representative plaintiff cannot fairly and adequately represent a proposed class when it includes the very individuals whom the plaintiff is accusing of the allege wrongdoing underlying the claim. *See Andrew Farm v. Calcot, Ltd.*, 268 F.R.D. 380, 388-89 (E.D. Cal. 2010); *see also Kirola v. City and Cnty. of San Francisco*, No. 07 Civ. 03685 (SBA), 2011 WL 996344, at *6-8 (N.D. Cal. Mar. 18, 2011).

Nor can it do so when the Plaintiffs themselves are equally liable under their own legal theory. *See Andrew Farm*, 269 F.R.D at 386 (class representative may have participated in concealing charges to other plaintiffs and thus is an inadequate representative). Plaintiffs seek to bring a class action in which they would have to put on trial not only their own actions, but also those of putative class members, leading to irreconcilable class conflicts and subjecting certain class member claims to a unique defense for which Plaintiffs lack the requisite interest fairly and adequately to rebut. *See, e.g., Lindblom v. Santander Consumer USA, Inc.*, No. 15 Civ. 00990 (BAM), 2018 WL 573356, at *5-6 (E.D. Cal. Jan. 26, 2018) (a "class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or to a subclass." (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))); *Jenson v. IPEX USA, Inc.*, No. 08 Civ. 00016 (MJP), 2008 WL 5062657, at *4 (W.D. Wash. Oct. 27, 2008) (because of "potential unique defenses," proposed class representative is struck for lack of typicality). Striking these allegations at the pre-discovery stage is particularly warranted because the intraclass conflicts presume that Plaintiffs cannot fairly represent the putative class's interests in discovery. *See Sanders*, 672 F. Supp. 2d at 991 (pre-discovery striking of class allegations). Accordingly, the class allegations must be struck.

F.     *The Court Does Not Have Personal Jurisdiction Over Bean*

Plaintiffs assert that the Court has personal jurisdiction over Bean, a resident of Georgia (*see* Compl. ¶ 23), solely because he allegedly "purposefully entered into

a general partnership controlled from California and because [he is] in a general partnership with at least one member that has conducted partnership business in California and they have directed at least some of their partnership activities at California." *See* Compl. ¶ 33.  However, Plaintiffs do not plausibly allege that Bean was a member of a general partnership controlled from California.  *See supra* Section D.  Thus, the Court may "exercise personal jurisdiction over [Bean,] a non-resident if jurisdiction is proper under California's long-arm statute and if that exercise accords with federal constitutional due process principles." *Perry v. Lyons*, No. 09 Civ. 00794 (JM) (CAB), 2009 WL 3062409, *2 (S.D. Cal. Sept. 22, 2009).

General jurisdiction does not apply to Bean because he is not domiciled in the California, *see* Compl. ¶ 23, and is not "essentially at home" in the district.  *See Ewing v. Empire Cap. Funding Group, Inc.*, No. 17 Civ. 02507 (LAB) (MDD), 2019 WL 157660, at *1 (S.D. Cal. Jan. 10, 2019).  Thus, the only jurisdiction available is specific jurisdiction. Specific jurisdiction exists where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Plaintiffs make no allegations that Bean himself engaged in any activity in California, beyond his work for Delaware companies that Plaintiffs allege are based in California.  *See* Compl. ¶¶ 28-29.  Because jurisdiction over an individual does not "automatically follow from jurisdiction over the corporation which employs him," there are no grounds to assert personal jurisdiction over Bean.  *Ewing*, 2019 WL 157660 at *2.  Accordingly, because Plaintiffs have not adequately alleged that Bean is a member of a California-based partnership, the Court lacks personal jurisdiction over Bean, who must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice as against the Leveragebox Defendants.

MEMORANDUM OF POINTS AND AUTHORITIES

Dated: July 18, 2022                    HAHN LOESER & PARKS LLP

By: _s/Michael J. Gleason_
Michael J. Gleason, Esq.
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
(619) 810-4300

MORRISON COHEN LLP
Jason P. Gottlieb, Esq. (4056008)
Daniel C. Isaacs, Esq. (4875902)
909 Third Avenue
New York, New York 10022
(212) 735-8600
*Admitted Pro Hac Vice*

*Counsel for Defendants Leveragebox
LLC, bZeroX LLC, Kyle Kistner, and
Tom Bean*