Jason Harrow
(Cal. Bar No. 308560)
Charles Gerstein (*pro hac vice* pending)
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLÉMENT OMÉTAK, CHRISTIAN SARCUNI, PEDRO CUNHA, ALEXANDER LLOYD, SKLIAR VIKTOR, MARC SIMON, PILICI RUSTAM, SHUAI LU, EDISON HO, KIRO ALEKSANDROV, JONAS WERNECKE, PAOLO LEITE, MIRAS ISSAKHOV, SOORAJ NARAYANAN, HÉCTOR ALBERT GONZÁLEZ TERRÓN, MANNU SINGH, MARC-JULIEN LIE, SIMON SCHMID, and DANIELE PENNA, on behalf of themselves and other similarly situated, | Case No. 22-cv-0618-LAB-DEB **MEMORANDUM IN OPPOSITION TO LEVERAGEBOX DEFENDANTS' MOTION TO DISMISS OR STRIKE** **CLASS ACTION JURY TRIAL DEMANDED** Judge: Hon. Larry Alan Burns Ctrm.: 14A Date: October 11, 2022 Time: 11:15 am Action filed: May 2, 2022 |
| Plaintiffs, | |
| vs. | |
| bZx DAO, KYLE KISTNER, TOM BEAN, HASHED INTERNATIONAL LLC, AGE CRYPTO GP LLC, OOKI DAO, LEVERAGEBOX LLC, and bZeroX LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES.......................................................... iii

PRELIMINARY STATEMENT ...................................................... 1

RELEVANT FACTS ....................................................................... 2

ARGUMENT ................................................................................... 3

   A.  The Complaint States A Negligence Claim................................ 4

      1.  Defendant bZx DAO Is Liable to Its Users For Its Negligence. ....................................................................... 4

      2.  Plaintiffs and Defendants Had A "Special Relationship" That Permits Recovery of Economic Losses. ....................... 7

      3.  Defendants Answer in *Respondeat Superior* ..................... 11

   B.  These Defendants Are Liable For The Torts Of The bZx DAO................................................................................... 12

      1.  The Transfer to The bZx DAO Resulted in The Formation Of A General Partnership. .................................................. 13

      2.  Defendants Were Key Participants In The bZx General Partnership. ...................................................................... 17

   C.  No Terms of Use Bound Plaintiffs.......................................... 22

   D.  This Court Has Personal Jurisdiction Over Bean .................... 23

   E.  Plaintiffs Do Not Allege That They Held BZRX Tokens, So They Can Adequately Represent The Class. ........................... 23

CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70 (2019) ................................................................................. 10

*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568 (2014) ........................................ 4

*Bullis v. Security Pac. Nat. Bank*, 21 Cal. 3d 801 (1978) ...................... 10

*Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-4825, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) .......................................... 23

*Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ..................................... 11

*Chazen v. Centennial Bank*, 61 Cal. App. 4th 532 (1998) ..................... 10

*Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284 (1992) ....................... 22

*Cochran v. Board of Supervisors*, 85 Cal. App. 3d 75 (1978) ................ 15

*Dickenson v. Samples*, 104 Cal. App. 2d 311 (1951) .............................. 22

*Fabian v. LeMahieu*, No. 19-cv-54, 2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) ................................................................... *passim*

*Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001 (N.D. Cal. 2013) ............. 22

*Holmes v. Lerner*, 74 Cal. App. 4th 442 (1999) ..................................... 16

*In re Sony Gaming Networks and Customer Data Sec. Breach Litigation*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) ........................... 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) ........................................................ 9

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979) ........................... 1, 8, 9, 10

*Jones v. Goodman*, 57 Cal. App. 5th 521 (2020) ............................ 15, 17

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) ............. 23

*Miske v. Bisno*, 204 Cal. App. 4th 1249 (2012) ...................................... 4

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ............. 23

*Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141 (2005) ......... 16

*Rowland v. Christian*, 69 Cal. 2d 108 (1968) ......................................... 5

*S. California Gas Leak Cases v. Superior Ct. of Los Angeles*, 7 Cal. 5th 391 (2019) ........................................................................... 8, 10

*Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017) ................................................................................................ 11

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)........................ 22

*Stacy v. Danielsen*, 609 F.3d 1033 (9th Cir. 2010).................................. 18

*Witriol v. LexisNexis Grp.*, No. 05-cv-2392, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ........................................................................ 9

**Statutes**

Cal. Civil Code § 1714 ............................................................................ 10

Cal. Corp. Code §  6202 .......................................................................... 21

Cal. Corp. Code § 16202 .................................................................. 15, 18

Cal. Corp. Code § 16307(b) .................................................................... 18

Cal. Corp. Code § 16307(c) .................................................................... 21

**Other Authorities**

ANDREESEN HOROWITZ, *About*, a16z.com/about ..................................... 14

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................ 6

Carla L. Reyes, *If Rockefeller Were a Coder*, 87 GEO. WASH. L. REV. 373 (2019) ............................................................................................ 14

David Kerr & Miles Jennings, ANDREESEN HOROWITZ, *A Legal Framework for Decentralized Autonomous Organizations*, https://perma.cc/WA9S-SBQT (Oct. 19, 2021) ................................... 14

Joshua Mapperson, *How Many DeFi Projects Still Have 'God Mode' Admin Keys?*, COINTELEGRAPH, Sept. 25, 2020, https://perma.cc/96NR-RX79 ......................................................... 6

Tom Bean, "Announcing bZx DAO," *bZx Blog*, available at https://perma.cc/6XGR-U6PZ ......................................................... 20

Wyoming Secretary of State, DAO: Frequently Asked Questions, https://perma.cc/2KJL-W8D9 ............................................................. 15

## PRELIMINARY STATEMENT

Plaintiffs lost millions of dollars of cryptocurrency because of a simple hack that Defendant bZx DAO (that is, "Decentralized Autonomous Organization") negligently permitted to occur. Plaintiffs used the bZx protocol—which bZx DAO held out as a reliable financial platform with security measures sufficient to protect users' holdings—to earn interest on deposited cryptocurrency. But bZx DAO had not taken security measures *it knew* it needed to take. A developer working for the DAO fell for a well-known, unsophisticated attack, and Plaintiffs' funds were lost. As a recent decision of the Northern District of California on strikingly similar facts confirms, these facts, if true, straightforwardly state a claim for negligence. *Fabian v. LeMahieu*, No. 19-cv-54, 2019 WL 4918431, at *11–12 (N.D. Cal. Oct. 4, 2019).

Four Defendants—bZx DAO founders Kyle Kistner and Tom Bean, and two LLCs—do not seriously dispute that the facts alleged show *someone* was negligent in allowing the hack to occur. Instead, they principally try to escape liability by contending that the protocol's shift to supposedly "decentralized" ownership means that neither they—nor, by implication, anyone else—can be held responsible for *any* losses related to the protocol, and by contending that Plaintiffs cannot recover for economic losses. Both contentions lack merit. *First*, this case fits within the established "special relationship" doctrine, according to which users of a service can recover in negligence when that service harms its users, even if that harm is purely economic or intangible. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979). *Second*, these Defendants are responsible for Plaintiffs' losses. The DAO's conscious decision to forgo corporate formalities means that the protocol was controlled by a general

partnership, with all general partners liable for the torts of the partnership as a whole. The co-founders of the protocol, who stayed involved after the shift to a DAO, are surely general partners. This Court should deny the motion.

## RELEVANT FACTS

bZx is a "a protocol for tokenized margin trading and lending."[1] (Am. Compl. ¶ 42.) It was created by Defendants Kyle Kistner and Tom Bean, and it was initially controlled by Defendant bZeroX LLC. (Am. Compl. ¶¶ 22–23, 29.) A product called Fulcrum, built using the protocol, allows users to lend tokens and earn interest when other people borrow them. (Am. Compl. ¶ 43.) bZx is primarily accessed through Fulcrum's website, where users can choose one of three blockchains on which transactions will be executed and recorded. (Am. Compl. ¶ 45.) Defendant Leveragebox LLC operates the Fulcrum website. (Am. Compl. ¶ 28.)

In August 2021, Kistner and Bean announced that the bZx platform would no longer be controlled by bZeroX LLC. Instead, as Bean wrote in a blog post, after this transaction "the legal entity bZeroX LLC [would cease] to exist, and in its place the DAO . . . [would] remain." (Am. Compl. ¶ 68.) Kistner and Bean, though, would still be involved in important governance and ownership decisions, stating that the "core team [had a] strong desire to continue working on the project." (Am. Compl. ¶ 68.) The bZx DAO would then be governed by votes of the holders of the BZRX token, who took control of the $80 million worth of assets in bZx's treasury. (Am. Compl. ¶ 68.)

---

[1] A brief background on relevant cryptocurrency principles and terminology is available at Amended Complaint ¶¶ 35–41.

On November 5, 2021, after that transition, a bZx developer fell for a common Internet scam. (Am. Compl. ¶¶ 51–53.) The attack "granted the hacker access to . . . the private keys to [two] deployment[s] of [the] bZx Protocol." (Am. Compl. ¶ 54.) The result was that approximately $35 million worth of stablecoins were stolen from users' wallets. Plaintiffs are eighteen of those victims who together lost approximately $1.7 million. (Am. Compl. ¶ 1.) As bZx DAO explained at the time, the private keys should not have been in the exclusive control of one person but "ha[d] not yet been transferred" to a more secure place. (Am. Compl. ¶ 58.) And this hack proved conclusively that those who held the "private keys" could take all the money in the protocol anywhere they wished.

## ARGUMENT

Plaintiffs sent their money to a protocol controlled by the bZx DAO. The DAO (as explained below) is a general partnership, and that entity—by virtue of entering a specific transaction with Plaintiffs and in fact taking custody of their funds—acquired a legal duty to exercise reasonable care with Plaintiffs' funds. Defendants breached that duty by giving one password on one developer's computer the capacity to "drain" all of Plaintiffs' funds, something they *acknowledged* should not have been the case, and by failing to supervise that developer by requiring the developer to protect against a simple phishing scam. Additionally, Defendants answer for the developer's negligence because they are the developer's employer, and the developer acted negligently within the scope of employment.

At the threshold of the negligence case, Defendants variously claim that (1) Plaintiffs are attempting to "pierce the corporate veil" and hold Kistner and Bean accountable for the torts of bZeroX LLC or Leveragebox

LLC, and (2) that Kistner and Bean *individually* "lack a duty of care" to Plaintiffs, and so cannot be held liable in negligence. (Mot. 8–9; 12–13.) Both related propositions misunderstand the Complaint's claim of liability. As explained below, Kistner and Bean are liable to Plaintiffs because the bZx DAO is a general partnership and Kistner and Bean are general partners; they are jointly and severally liable for Plaintiffs' injuries regardless whether they individually owed Plaintiffs a duty. *E.g.*, *Miske v. Bisno*, 204 Cal. App. 4th 1249, 1257 (2012) ("[A]ll general partners, including innocent general partners, are jointly and severally liable to creditors for the tortious acts of a copartner done in connection with, or in the process of, the partnership business."). Accordingly, Plaintiffs first explain why the Complaint plausibly states a claim for negligence. Then Plaintiffs explain that the bZx DAO is a general partnership; explain that Defendants here are partners; and, finally, address Defendants' other arguments.

## A. The Complaint States A Negligence Claim.

### 1. Defendant bZx DAO Is Liable to Its Users For Its Negligence.

To prevail on a claim for negligence under California law, a plaintiff must establish that the defendant owed a legal duty, the defendant breached that duty, and the breach proximately caused the plaintiff's damages. *E.g.*, *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014). Here, the analysis is straightforward. Whoever managed the bZx protocol owed its users a duty in the same way that most online services owe their users duties, and that manager is responsible in negligence for the damages

proximately caused by its acknowledged failure to meet the standard of care for security measures.

The Northern District of California reached this same conclusion in a case with strikingly similar facts. In *Fabian v. LeMahieu*, 2019 WL 4918431, the plaintiff was a cryptocurrency investor who filed a proposed class action against a cryptocurrency platform, key members of its team, and the cryptocurrency exchange where the platform's token was traded. *Id.* at *2–*6. The plaintiff alleged that cryptocurrency had been stolen from the exchange because of "unauthorized transactions" that defendants negligently allowed. *Id.* In a ruling denying the defendants' motion to dismiss, the court ruled that the plaintiffs had stated a claim for negligence under California law. In finding that the defendants owed a duty of care to the plaintiff, the court stated:

> It was foreseeable that a lack of security on the primary exchange for [the relevant cryptocurrency] would cause harm to individuals who, like plaintiff, deposited their [cryptocurrency] on that exchange and that any security failure on that exchange would result in harm to plaintiff and other similarly situated individuals. Further, it is plausible that [defendants] alleged conduct, if true, could be viewed as morally reprehensible and this type of action could further the goal of preventing future harm. Imposing a duty to exercise care in this instance will not result in an undue burden on the [defendants] or the industry at large. Moreover, [defendants'] conduct was proximately connected to plaintiff's injury.

*Id.* at *12 (citing *Rowland v. Christian*, 69 Cal. 2d 108 (1968)). That reasoning applies here, unaltered.

Defendants implicitly argue that *Fabian* is distinguishable (although they do not cite the case) because there the defendant was a "centralized" exchange with "custody" over the plaintiffs' funds and here the Defendant DAO is (as its name suggests) a "decentralized" exchange without "custody" over Plaintiffs' funds. (*E.g.*, Mot at 14:4–5.) But the relevant portion of the *Fabian* opinion did not rely on the defendants' custody of the plaintiffs' funds. *Fabian*, 2019 WL 4918431 at *12. And regardless, the only difference between *Fabian* and this case is the legal form that the Defendant chose. There, the defendants sought limited liability by forming a legal entity. Here (as explained in much greater detail below) Defendants formed a general partnership. But both entities had "custody" of user funds at the relevant time. As alleged in the Complaint, a "bZx developer" working on behalf of bZx DAO possessed "private keys to the BSC and Polygon deployment of the bZX protocol." (Am. Compl. ¶ 49.) These "private keys" allowed "draining of all tokens" locked in the platform. (*Id.*). Thus, although Defendants may be correct that no *individual* Defendant here had "custody" of Plaintiffs' funds, the DAO did. Those who hold the private keys to the bZx DAO has the capacity to "hold[] [the] property [in the protocol] in [their] power [and] . . . exercise . . . dominion over [the] property." *Possession*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* Joshua Mapperson, *How Many DeFi Projects Still Have 'God Mode' Admin Keys?*, COINTELEGRAPH, Sept. 25, 2020, https://perma.cc/96NR-RX79. Although the holder of the private keys does not have *ownership* of the funds in the protocol, that holder surely has *custody* of those funds. Indeed, that is why the hack worked.

*Fabian* also confirms that the alleged facts state a claim for negligence. Defendants, with little actual argument, dispute this by

saying that "[t]here are no allegations as to what the individuals (or any defendant) should have done to comport with reasonable standards in the industry, and no allegations that the criminal attack would have been prevented if any particular steps had been taken." (Mot. 17:25–28.) But that ignores relevant allegations. The Complaint alleges not that bZx was the victim of a sophisticated intrusion but instead of a "phishing scam" that was enabled because bZx did had not yet "implemented security measures that its operators knew were reasonably necessary to protect the protocol." (Am. Compl. ¶ 1.) Among those security measures that should have been taken was the transfer of the private keys to the DAO, which in fact had happened on one blockchain—hence the DAO's comment that this transfer was something that "went right" while security on the other blockchains had gone wrong. (Am. Compl. ¶ 59.) And the Complaint alleges not only that this security measure had been promised (Am. Compl. ¶¶ 46–47), but also that bZx earlier was sent a "similar" attack and so should have been prepared to guard against this one (Am. Compl. ¶ 61). And the *Fabian* court reasoned that allegations of an "exploited fault" in an online cryptocurrency platform are sufficient to prove causation and state a claim. 2019 WL 4918431 at *13. So too here.

### 2. Plaintiffs and Defendants Had A "Special Relationship" That Permits Recovery of Economic Losses.

Defendants, without citing *Fabian*, resist this conclusion. Defendants' primary argument is that the so-called "economic loss rule" bars recovery, notwithstanding what would normally be a viable claim.

(Mot. 10–12.) But that doctrine did not preclude the *Fabian* case from proceeding, and it does not apply here, because Plaintiffs have a "special relationship" with these Defendants: the Defendants provided a service directly to the Plaintiffs. In the *Gas Leak* case on which Defendants primarily rely, the California Supreme Court reaffirmed that, in cases where plaintiffs and defendants have a "special relationship" such that economic injury from the defendants' negligence is easily foreseeable, there is a valid claim for negligence. *S. California Gas Leak Cases v. Superior Ct. of Los Angeles*, 7 Cal. 5th 391, 397 (2019).

The test for determining whether a special relationship exists, as the *Gas Leak* court explained, comes from the California Supreme Court's earlier decision in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979). In *J'Aire*, the court stated the commonsense proposition that "[r]ecovery for injury to one's economic interests, where it is the foreseeable result of another's want of ordinary care, should not be foreclosed simply because it is the only injury that occurs." *Id.* at 806. The *J'Aire* court then outlined six factors to determine whether Plaintiffs may recovery purely economic losses from defendants. Defendants quote this test but do not even attempt to attempt to apply it. (Mot. 12:10–17).

The *J'Aire* factors are

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury . . . , (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."

*J'Aire*, 24 Cal. 3d at 804 (reaffirmed in *Gas Leak*, 27 Cal. 5th at 401).[2] Here, (1) the transaction intended to affect Plaintiffs, who were Defendants' customers; (2) the harm was therefore directly foreseeable, *see Fabian*, 2019 WL 4918431 at *12; (3) the Plaintiffs' injury is certain: the currency was taken directly from their wallets; (4) the connection is direct: but for Defendants' negligence, Plaintiffs' currency would have been safe; (5) as the *Fabian* court stated, Defendants' conduct "could be viewed as morally reprehensible," *id.*, especially in light of the promises they made about the protocol's security that they failed to honor, and (6) imposing liability here "could further the goal of preventing future harm," *id.*, by ensuring that negligent platform managers must pay when their own security failures lead to predictable losses by their customers.

Holding that Plaintiffs state a claim for negligence on these facts, as alleged, is consistent with a line of cases holding service providers owe a duty of care to their users, and so can be liable for all losses, including economic harms, that befall users when the service providers are negligent. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132 (N.D. Cal. 2018) (applying the *J'Aire* factors and holding that email provider had special relationship with its users, and so economic loss rule did not preclude claims for negligence stemming from data breaches); *Witriol v. LexisNexis Grp.*, No. 05-cv-2392, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (holding that

---

[2] Although the *Fabian* court did not specifically cite *J'Aire*, the factors it considered in the "duty of care" inquiry are almost identical to the *J'Aire* factors. *Compare* 2019 WL 4918431 at *12 (applying six factors from *Rowland*, quoted in full *supra* at 5) with *J'Aire*, 24 Cal. 3d at 804 (quoted in full immediately above).

service safeguarding consumers' personal and confidential information owes them a duty of care); *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 543 (1998) ("It is well established that a bank has 'a duty to act with reasonable care in its transactions with its depositor.'") (quoting *Bullis v. Security Pac. Nat. Bank*, 21 Cal. 3d 801, 808 (1978)).

By contrast, the plaintiffs in *Gas Leak*, Defendants' primary authority, were not customers of the defendant; rather, they were businesses whose income was reduced when the devastating 2015 Porter Ranch gas leak forced evacuations of a large area. The California Supreme Court disallowed recovery because courts "lack clear spatial bounds within which to cabin claims" in circumstances like that case. *Gas Leak*, 7 Cal. 5th at 408. Other cases on which Defendants rely also implicate third parties, involved economic losses where there was insufficient connection between the injuries alleged and the defendants' conduct, or did not even apply the economic loss doctrine at all.[3] But the result in this case is clear. If the bZx DAO did not owe these Plaintiffs a tort duty, then it owed no tort duty to anyone, anywhere. *But see* Cal. Civil Code § 1714 ("Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management

---

[3] *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 82 (2019) (rejecting claim against national fraternity by student injured at fraternity party hosted by local chapter because there was no relationship between plaintiff and national chapter); *In re Sony Gaming Networks and Customer Data Sec. Breach Litigation*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014) (applying *J'Aire* factors and rejecting negligence claim primarily on causation grounds, given that the speculative injuries plaintiffs alleged were "not proximately caused by Sony's alleged failure to provide reasonable network security and/or did not result in a measurable loss").

of his or her property or person."). Defendants' attempt to dismiss the negligence claim on these grounds is meritless.

### 3. Defendants Answer in *Respondeat Superior*

Defendants do not appear to address their liability under a *respondeat superior* theory specifically, arguing instead that the developer whose keys were stolen did not owe Plaintiffs a duty of care (Mot. 12:20–24) and that the bZx DAO is not a suable entity. The latter claim is addressed below. The former is meritless, as Defendants appear to concede by offering nothing in support of it. As explained above, a service provider—particularly one who has custody over funds—is usually in a special relationship with the recipients of that service. Here, the unnamed developer had possession of a private key to all of Plaintiffs' funds; the developer was using that key to do work on the bZx protocol, on behalf of the bZx DAO, who employed him (*e.g.*, Amend. Compl. ¶ 68); and the developer fell for a simple phishing attack. Defendants' contention that "[t]here are no allegations as to what [the developer] should have done to comport with reasonable standards in the industry," (Mot. 17:25–26), but the security failure here is not only discussed in detail above but also obvious, as several courts have specifically held.[4] *E.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) (holding breach shown where defendants "released such sensitive information to the phishers"); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017)

---

[4] It is of course possible that the developer was malicious, not negligent. If that proves to be so, the same analysis would apply to the claims based on bZx DAO's own negligence, but Plaintiffs would likely amend to assert a conversion claim on a *respondeat superior* theory.

1  (holding "allegations are sufficient to state a claim for negligence" where

2  "employee responded to a phishing email by sending Plaintiffs' [personal

3  information] to cyber-criminals").

4      Defendants finally appear to argue that Plaintiffs have mistakenly

5  conflated the negligent developer's employment with the bZx DAO and

6  bZeroX LLC and, therefore, that *respondeat superior* liability is not

7  plausibly pleaded for the former. (Mot. 16:17–22.) This is meritless. In

8  paragraph 55, Plaintiffs quote a news source as saying "'A hacker stole

9  millions after a developer at bZx, a crypto company, fell for a phishing

10  attack,'" and say in the next paragraph that the developer was working

11  for the bZx DAO (Amend. Compl. ¶ 56). Nowhere do Plaintiffs say that

12  the developer worked for bZeroX LLC.

13  **B.  These Defendants Are Liable For The Torts Of The bZx**

14  **DAO.**

15      The Leveragebox Defendants reveal in the first sentence of their

16  fact section their plain desire to claim that no person or entity can *ever*

17  be responsible for torts of the bZx DAO. The bZx protocol, Defendants

18  say, "is computer software that exists on the Internet." (Mot. at 4:3). True

19  enough. But *people* created the software; work on the software; earn

20  money from those who pay for it; and, most importantly, *control* it. Those

21  people are responsible for the torts they commit through that software.

22      Defendants do not seem to dispute that, if the hack had occurred

23  before bZeroX LLC transferred assets to the bZx DAO in August 2021,

24  the LLC would be the primary entity responsible for the funds

25  negligently lost, assuming there were a viable tort claim. (*See* Mot. 13:12–

26  13 (arguing that bZeroX owed Plaintiffs no duty of care because "*at the*

27

28

*time of the hack*, bZeroX LLC no longer controlled the Protocol, having relinquished control of the software over to BZRX token holders" (emphasis added))). But Defendants' remarkable theory is that, once that transfer occurred, the liability that would have attached to bZeroX LLC was removed *without a successor*. In fact, something like the opposite happened: by consciously choosing to rid itself of corporate formalities, the bZx DAO defaulted to a general partnership, with the four Leveragebox Defendants, and the other Defendants in this case, as members of that partnership who are liable for the partnership's torts.

### 1. The Transfer to The bZx DAO Resulted in The Formation Of A General Partnership.

By its own description, the bZx DAO is an organization "armed with tens of millions of dollars," that, in August 2021, was to "take up the task of maintaining the protocol, building new products, marketing the brand, and managing the community." (Am. Compl. ¶ 68.) The DAO has the "keys to the bZx treasury," and BZRX tokenholders are "the main drivers of governance and decision making of the bZx platform." (Am. Compl. ¶ 69.) Plaintiffs plausibly allege, based on Defendants' own statements and actions—including their repeated references to the treasury and money held by the protocol—that the DAO exists for the purpose of making a profit. And, while bZx DAO is apparently a direct replacement for bZeroX LLC, the DAO did not register for any form of limited liability with any state or nation. At a high level of generality, then, the DAO must be a general partnership because it is a business organization that never registered, and general partnerships are the default business organization. *E.g.*, Carla L. Reyes, *If Rockefeller Were a Coder*, 87 GEO.

WASH. L. REV. 373, 391 (2019) ("As a default entity, when a business venture with multiple owners fails to file paperwork to operate the business in some other form . . ., a partnership is automatically formed.").

Several important figures involved with "decentralized finance software"—that is, software like bZx "with which users can unilaterally and permissionlessly engage in financial-type transactions" (Mot. 4:10–11)—have reached the same conclusion. Miles Jennings is general counsel for cryptocurrency issues at Andreesen Horowitz, an investment company that, with more than $35 billion in assets under management, can pay for sophisticated legal advice. As Jennings and a co-author have explained:

> a DAO's decision to not create a legal entity does not offer protection from responsibilities that may arise in the operation of a DAO. From a legal perspective, when two or more individuals are engaged in even a tenuous business relationship, the imputed structure is that of a general partnership. Significant legal precedent exists for U.S. courts utilizing a functional approach to determining whether a partnership was formed irrespective of disclaimers and specific intent to not form a partnership.

David Kerr & Miles Jennings, ANDREESEN HOROWITZ, *A Legal Framework for Decentralized Autonomous Organizations*, https://perma.cc/WA9S-SBQT (Oct. 19, 2021); *see also* ANDREESEN HOROWITZ, *About*, a16z.com/about (listing assets).

In fact, lead counsel for these very Defendants shared this view as recently as a few months before the Complaint in this case was filed. In an article dated October 20, 2021, Jason Gottlieb and Daniel Isaacs, Defendants' lead counsel, noted that, "[w]hile the law has long imposed

the useful fiction of personhood on corporations[,] . . . DAOs do not yet enjoy these privileges (for the most part)."[5] Jason Gottleib, Daniel Isaacs & Alexandra Wang, *How to Do Business as a DAO*, COINDESK, Oct. 20, 2021, https://perma.cc/97KC-XDLX. They correctly observed that "[t]here is a risk the DAO could be considered a general partnership or unincorporated association" which "might expose its members to personal liability for any of the DAO's actions and obligations." *Id.* They even noted that the "lack of legal protections and practicalities available to [DAOs]" presents "their lawyers . . . with a host of execution and analytical challenges." *Id.*[6] So it has.

Under California law, "the association of two or more persons to carry on as coowners of a business for profit forms a partnership," and that is true "whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202. In other words, "unless persons associated to do business together establish a formal entity like a corporation, the association is deemed to be a partnership regardless of the parties' intent." *Jones v. Goodman*, 57 Cal. App. 5th 521, 540 n.19 (2020) (citing Cal. Corp. Code § 16202(a)). "[C]o-ownership of any sort and profit-sharing are factors tending to establish partnership." *Cochran v. Board of Supervisors*, 85 Cal. App. 3d 75, 80–81 (1978), *overruled on other*

---

[5] "For the most part" likely refers to the fact that a few states, like Wyoming, have begun to offer explicit legal recognition to DAOs who comply with certain formalities. *E.g.*, Wyoming Secretary of State, DAO: Frequently Asked Questions, https://perma.cc/2KJL-W8D9.

[6] In light of defense counsel's published statements, the Court should disregard Defendants' inappropriate rhetoric on this issue. (*See, e.g.*, Mot. 3:10 (calling the general-partnership theory "outrageous"); *id.* at 18:21 ("far-fetched"); *id.* at 18 n.4 ("the pet project of a plaintiffs' law firm")).

*grounds by Weiner v. Fleischman*, 54 Cal. 3d 476 (1991). An express written agreement to share profits is not required. *Holmes v. Lerner*, 74 Cal. App. 4th 442, 453 (1999) (rejecting the argument that "without an agreement to share profits, there can be no partnership"). "[T]he distinguishing feature of partnership is association to carry on business together, not agreement to share profits." *Id.* The "crucial factor" in determining the existence of a general partnership is "the intent of the parties revealed in the terms of their agreement, conduct, and the surrounding circumstances when determining whether a partnership exists." *Id.* Importantly, "it is well-settled that the existence of a partnership is a question of fact." *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1157 (2005).

Defendants object to this simple reasoning, but they have no way to account for the transaction that occurred in August of 2021, when bZeroX LLC purported to dissolve (Am. Compl. ¶ 68) and transferred assets to the bZx DAO. They call Plaintiffs' theory "far-fetched" and refer to the partnership allegations as "amorphous and oft-changing." (Mot. 18.) But they also deny that the bZx DAO is a "juridical entity that has the capacity to use or be sued." (Mot. 18 n.3.) The implication of their theory is clear: according to Defendants, when bZeroX LLC transferred assets to the bZx DAO and "turned over the keys" to an entity with $80 million in its treasury, it also created a get-out-of-jail-free card for anyone who owned and controlled the business. Defendants' view is that the transaction dissolved a corporate entity and replaced it with nothing. That is not how the law works. Those carrying on businesses for profit do not get to choose the "none of the above" box when presented with the law's choices of entities. Instead, "unless persons associated to do

business together" choose some specific corporate formality, "the association is deemed to be a partnership regardless of the parties' intent." *Jones*, 57 Cal. App. 5th at 540 n.19. That is what occurred here.

### 2. Defendants Were Key Participants In The bZx General Partnership.

As previously established, the existence of a general partnership is a question of fact. The Complaint plausibly alleges that Kistner and Bean are individual general partners in the bZx partnership. Kistner and Bean formed and originally controlled two LLCs associated with bZx, bZeroX and Leveragebox, with bZeroX having "developed the Protocol," per the Defendants. (Am. Compl. ¶ 67; Mot. 5:9.) Kistner and Bean were, and apparently still are, the "sole members and managers" of the entities. (Mot. 5:13–14.) The Complaint plausibly alleges that Kistner, who was still listed as being employed at bZx well after the transition to the DAO form, continued to make important decisions relevant to the protocol and the partnership. (Am. Compl. ¶ 72.) The Complaint also alleges that Bean continued to participate in the decisionmaking of the protocol and its successor, and that he intentionally communicated with Kistner about protocol—and, therefore, partnership—business. (Am. Compl. ¶ 73.) Indeed, in the blog post announcing the transition to a DAO, Bean himself mentioned that the "core team"—which, by strong inference, includes co-founders Kistner and Bean—wanted to "continue working on the project."[7] (Am. Compl. ¶ 69.)

_____

[7] The Amended Complaint does not specifically allege that Bean and Kistner received BZRX tokens after the transition to the DAO. But their holding BZRX tokens is a "reasonable inference" from the facts

Those allegations are more than sufficient to raise a plausible claim that Kistner and Bean were and are general partners in the bZx DAO. As co-founders, their opinion on decisionmaking doubtless carries substantial weight with others involved in the DAO, and they admitted that they "work[] on" the DAO's management. (Amend. Compl. ¶ 69.) As sole members and managers of the legal entity that set the terms for the transition to DAO form, they are intimately familiar with the operations of the partnership. As the two people with a prior, substantial monetary interest in the predecessor entity, it is more than plausible that they stand to share in any profits (or losses) of the successor partnership. They are thus general partners in the bZx DAO general partnership. *See* Cal. Corp. Code § 16202. And "an action may be brought against the partnership *and* any or all of the partners in the same action." Cal. Corp. Code § 16307(b) (emphasis added).

Still, Defendants somehow argue that Plaintiffs must "pierc[e] the corporate veil" to hold Kistner and Bean accountable. (Mot. 8:2–3.) But

---

alleged, and so is properly considered for purposes of this motion. *See, e.g.*, *Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (courts "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff"). Plaintiffs have alleged that each was a co-founder of the protocol (Am. Compl. ¶¶ 22, 23); that each wished to, and did, stay involved with the decisionmaking of the protocol after the transition to the DAO (Am. Compl. ¶¶ 69, 72, 73); and that the "bZx DAO is controlled by those who hold the BZRX token" (Am. Compl. ¶ 69). It is a necessary implication that Kistner and Bean hold BZRX tokens, which Defendants recognize. (Mot. at 18:14–15 ("Plaintiffs allege that [Leveragebox Defendants and other tokenholders] are partners simply by virtue of the fact that they held BZRX tokens."). To the extent that a specific allegation of token-holding would be preferable, Plaintiffs respectfully request leave to further amend the Complaint.

Bean himself said that the legal entity initially controlling the bZx protocol, bZeroX LLC, *ceased to exist* when control was transferred to the DAO and that Kistner and Bean nonetheless continued to participate in the governance of the business. And now they contend that Leveragebox LLC never did anything other than manage the online interface by which users interact with the bZx protocol. (Mot. 8:1–9:19.) Behind what veil do Kistner and Bean seek to hide here? That is, the Leveragebox Defendants contend that Kistner and Bean acted on behalf of some LLC (which one, they do not say) when governing the DAO (Mot. 9:5–7), such that holding them liable would constitute impermissible veil piercing; yet Bean says that bZeroX LLC dissolved when control was transferred to the DAO (Amend. Compl. ¶ 68); and Defendants now say that Leveragebox LLC had nothing to do with the DAO (Mot. 13:14–17). Kistner and Bean may eventually show that there is a genuine dispute of material fact as to whether their work operating the DAO was done on behalf of the LLCs— this is why the LLCs are also proper defendants at this stage—but, as pleaded, the allegations of the Complaint seek to pierce no corporate veils.

Defendants next argue that the idea that Kistner and Bean "intentionally agreed to form or join a general partnership, together with anyone and everyone who held BZRX tokens, to run the Protocol as a for-profit business is not factually alleged, nor could it be [because] it is simply not 'plausible on its face.'" (Mot. 19:1–4.) Yet this is exactly what Tom Bean himself wrote, on behalf of himself and Kistner for bZeroX, just before the LLC transferred assets to the DAO. Bean explained on August 3, 2021, that "the bZx legal entity will be dissolved and *replaced with* the DAO as the primary governance entity controlling the

organization." Tom Bean, "Announcing bZx DAO," *bZx Blog*, available at https://perma.cc/6XGR-U6PZ (emphasis added).[8] Bean noted that the bZx treasury, which then contained $80m worth of assets, would be "turned over to the DAO," and that the "DAO and bZx tokenholders will be the main drivers of governance and decision making." *Id.* He noted that "DAO expenditures" would be approved by "tokenholders" and that "bZx team members . . . will receive salaries from the DAO." *Id.* Bean summed it up nicely: the "purpose of the transition to a DAO," he wrote, "is so that bZx can become managed entirely by the community of bZx tokenholders." *Id.* That is all to say that the bZx DAO is a *complete replacement* for bZeroX LLC. Hence, what Defendants say is implausible—that "everyone who held BZRX tokens" would form a partnership to "run the Protocol as a for-profit business"—is *precisely* what Bean described when he transitioned the LLC to a DAO. Bean and Kistner went from being sole members of the LLC to key members of the general partnership that was running the Protocol.

Defendants also complain repeatedly, but inaccurately, that "Plaintiffs ask this Court, on the basis of this pleading and as a matter of law, to find that each and every BZRX token holder plausibly could be a co-owner of a business with management authority and unlimited personal liability for any losses connected to the platform, and thus subject to full discovery into their potential liability." (Mot. 22–23.) In fact, Plaintiffs ask this Court to find that each of six named Defendants "plausibly could be a co-owner of a business," because each named Defendant was either the co-founder of the business, an entity connected

---

[8] This blog post is the source of the quotations at ¶¶ 68 and 69 of the Amended Complaint.

with those co-founders and used for business purposes, or a publicly identified investor in the business. The Court need not decide whether someone who was a BZRX tokenholder for "mere seconds" (Mot. 22:8) is a member of the general partnership, because no such people are named here as Defendants; they are likely not partners, *see* Cal. Corp. Code § 6202; and, anyway, they would not be automatically personally liable even if the general partnership is. Cal. Corp. Code § 16307(c) ("A judgment against a partnership is not by itself a judgment against a partner."). Still, to the extent that this novel legal arrangement expands the burdens and benefits of ownership beyond what Defendants now believe is fair, it is worth repeating both that this expansion is exactly what the bZx co-founders intended with the transition to the DAO, and that knowledgeable counsel—indeed, *Defendants' own counsel*—publicly predicted that liability for the partnership's debts might personally attach as a result of this structuring. *See* Gottlieb & Isaacs, *supra* ("There is a risk the DAO could be considered a general partnership or unincorporated association" which "might expose its members to personal liability for any of the DAO's actions and obligations.").

Defendants also claim that the Complaint fails to plausibly allege Kistner and Bean's involvement as partners because there are no specific "examples of the Leveragebox Defendants exercising activity that reflects an intentional agreement to share profits and losses" (Mot. 20:11–12), nor are there "allegations that [they] exercise control over the alleged partnership business" (Mot. 21:7–8). But those things are alleged here: as stated, the rules of the DAO necessarily permit its members to "suggest and vote on governance proposals," including those that disburse funds from the DAO's treasury. (Am. Compl. ¶ 69.) And Bean

and Kistner are key members of that DAO (indeed its *founders*) who admit—at least as a matter of plausible inferences to which Plaintiffs are entitled—that they "stay[ed] involved" after the transition to a DAO. (Am. Compl. ¶¶ 69, 72, 73.)[9]

## C. No Terms of Use Bound Plaintiffs.

Defendants also contend that Terms of Use on the Fulcrum website, which is operated by Leveragebox LLC—which *Defendants* contend has "no relationship" with Plaintiffs (Mot. 13:17)—prohibit these claims. (Mot. 9–10.) Defendants acknowledge that the only possible indication of the assent of any Plaintiff to be bound by the Terms was the use of the Fulcrum site to access the Protocol. (Mot. 9:25–26.) The homepage for Fulcrum, in turn, contains a single link to the "Terms of use" at the very bottom of a lengthy homepage, in extremely small print, placed below eighteen other links appearing in larger type. (Gottlieb Decl., Ex. 2, at 23 (see [or try to] faint link to "Terms of use").)

California law is pellucidly clear that this sort of "browsewrap agreement . . . is not sufficient to bind the consumer." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021); *see also Long v.*

---

[9] In any event, Defendants misstate the level of specificity required at this stage. Plaintiffs must plead their case, not prove it, and Defendants' primary authority was decided on full factual records. *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1006 (N.D. Cal. 2013) (summary judgment decision); *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1286 (1992) (appeal from grant of summary judgment); *Dickenson v. Samples*, 104 Cal. App. 2d 311, 313 (1951) (appeal from judgment after verdict). But to the extent that the Court agrees with Defendants that more specificity is required, the proper remedy would be to grant leave to amend the Complaint, not to dismiss the case with prejudice.

*Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 865 (2016) (no contract formed when site owner used browsewrap); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014) (same). The only relevant exception to that general rule is where there is evidence that plaintiffs "admit to *actual knowledge* of the [site's Terms]," as they did in *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-4825, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) (emphasis added). But, even though Defendants purport to rely on *Cairo* (and no other case, *see* Mot. 9–10), in this case, there is no evidence of actual knowledge.

**D.    This Court Has Personal Jurisdiction Over Bean**

Defendants contend that this Court lacks personal jurisdiction over Bean because Plaintiffs have not adequately alleged that he joined a California general partnership. (Mot. 24:27–25:4.) Defendants do not contest that if he is a partner, he may be haled into court here. (Mot. 25:22–23 (arguing no personal jurisdiction "because Plaintiffs have not adequately alleged that Bean is a member of a California-based partnership.")) Bean thus concedes that this Court thus has jurisdiction over him if Plaintiffs adequately allege a partnership, which they do (*supra*).

**E.    Plaintiffs Do Not Allege That They Held BZRX Tokens, So They Can Adequately Represent The Class.**

Finally, Defendants contend that the class allegations should be stricken because "Plaintiffs themselves . . . allege that they held BZRX tokens" and so would be conflicted as both possible plaintiffs and potentially liable for the tort. (Mot. 23:27–28.) This is false. Defendants cite Amended Complaint ¶ 64 for the proposition that "[a]ll of the

1   Plaintiffs were also BZRX tokenholders." (Mot. 5:19–20.) That paragraph
2   says the opposite: "*None* of the Plaintiffs or proposed class held
3   meaningful stakes of BZRX token." (*See* Am. Compl. ¶ 64 (emphasis
4   added).) There is no reason to strike the class allegations.

5                               **CONCLUSION**

6          The motion to dismiss or strike should be denied. If it is granted,
7   Plaintiffs should be given leave to amend to make additional allegations
8   regarding Defendants' partnership activities.

9

10                              Respectfully submitted,

11                              */s/ Jason Harrow*
12                              Jason Harrow
                                (Cal. Bar No. 308560)
13                              GERSTEIN HARROW LLP
14                              3243B S. La Cienega Blvd.
15                              Los Angeles, CA 90016
                                jason@gerstein-harrow.com
16                              (323) 744-5293

17                              *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28