MORRISON COHEN LLP
Jason P. Gottlieb (NY SBN 4056008)*
Daniel C. Isaacs (NY SBN 4875902)*
Alexandra Wang (NY SBN 5416748)**
909 Third Avenue
New York, NY 10022
Telephone:  212.735.8600
Facsimile:  212.735.8708
jgottlieb@morrisoncohen.com
disaacs@morrisoncohen.com
awang@morrisoncohen.com

*admitted *pro hac vice*
**pro hac vice application forthcoming*

HAHN LOESER & PARKS LLP
Michael J. Gleason (CA SBN 279434)
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Telephone: 619.810.4300
Facsimile: 619.810.4301
mgleason@hahnlaw.com

*Attorneys for Defendants Kyle Kistner, Tom Bean, Leveragebox LLC and bZeroX LLC*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTIAN SARCUNI, *et al.*, on behalf of themselves and other similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>bZx DAO, KYLE KISTNER, TOM BEAN, HASHED INTERNATIONAL LLC, AGE CRYPTO LLC, OOKI DAO, LEVERAGEBOX LLC, and bZeroX LLC,<br><br>Defendants. | **Case No. 3:22-cv-00618-LAB-DEB**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEVERAGEBOX DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS** |

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................. ii

INTRODUCTION ..................................................................................................... 1

I.     The "BZX Dao" Owed No Duty To Plaintiffs ...................................... 2

II.    BZRX Token Holders Are Not In A Partnership With Each Other ..... 5

III.   In Any Event, The Leveragebox Defendants Are Not Partners .......... 6

IV.   There Is No Basis To Pierce The Corporate Veil ................................ 9

V.    There Is No Personal Jurisdiction Over Bean ..................................... 9

VI.   Plaintiffs' Class Allegations Should Be Stricken ............................... 10

CONCLUSION ....................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Andrews v. Plains All Am. Pipeline, LP*,
  No. CV-15-4113 PSG, 2019 WL 6647930 (C.D. Cal. Nov. 20, 2019) ..................... 6

*Cork v. CC-Palo Alto, Inc.*,
  534 F. Supp. 3d 1156 (N.D. Cal. 2021) .................................................. 11

*Diaz v. Intuit, Inc.*,
  No. 5:15-cv-01778 (EJD), 2018 WL 2215790 (N.D. Cal. May 15, 2018) ............... 9

*Everett Castillo v. Seagate Tech., LLC*,
  No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .................. 9

*Ewing v. Empire Cap. Funding Group, Inc.*,
  No. 17 Civ. 02507 (LAB) (MDD), 2019 WL 157660 (S.D. Cal. Jan. 10, 2019) .... 14

*Fabian v. LeMahieu*,
  No. 19-cv-00054-YGR, 2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) ..................... 8

*Goehring v. Superior Court*,
  62 Cal. App. 4th 894 (Ct. App. 1998) ..................................................... 14

*Pozzi v. Los Angeles*,
  No.2: 20-CV-7035, 2020 WL 6586307 (C.D. Cal. Sept. 9, 2020) ................ 11, 12

*Sackin v. Transperfect Global., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2018) ...................................................... 9

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................... 14

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) .............................................................. 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ..................................................... 9

*Stacy v. Danielsen*,
  609 F.3d 1033 (9th Cir. 2010) .............................................................. 11

*Witriol v. LexisNexis Grp.*,
    No. C05-cv-02392 (MJJ), 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ................ 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) .................................................................. 8

**STATUTES**

RULE 12(B)(6) .................................................................................................................. 7

**OTHER AUTHORITIES**

*bZx* Blog, available at https://perma.cc/6XGR-U6PZ ................................................... 12

*Market Slides*, September 21, 2022, *available at:*
    https://news.bloomberglaw.com/business-and-practice/crypto-lawyers-bet-big-on-
    class-action-lawsuits-as-market-slides ................................................................... 5

Tom Bean, "Announcing bZx DAO," ............................................................................ 12

# INTRODUCTION

Plaintiffs concede that the Leveragebox Defendants did not owe them any duties. This ends a negligence case. To circumvent this obvious fatal flaw, Plaintiffs argue that the Leveragebox Defendants are vicariously liable because they are allegedly "general partners" in the "bZx DAO," a supposed organization that purportedly had, and breached, some duty to Plaintiffs. *See* Opp. at 4:4-7.

Under that theory, the Complaint would have to sufficiently allege all of the following: (i) that BZRX token holders are a partnership (even though the Complaint fails to allege that the disparate community of token holders have the necessary touchstones of a partnership), (ii) that the Leveragebox Defendants are general partners of that partnership (even though the Complaint fails to allege that they held BZRX tokens or participated in governance), and (iii) that the supposed partnership is liable to Plaintiffs for economic losses based on a negligent act (notwithstanding the lack of a special relationship alleged between the parties). The Complaint does not plausibly allege any of these circumstances, let alone all of them.

Further, Plaintiffs now concede that defendants are allegedly responsible only as "general partners" of the DAO that is purportedly the "partnership" – even though the Complaint alleges that the BSC and Polygon deployments of the Protocol, the only parts that were hacked, "ha[d] not yet been transferred to the DAO." *See* Compl. ¶ 58. If the DAO did not control those functions, then Defendants cannot be responsible as "general partners" of the DAO.

Additionally, because Plaintiffs concede that there are no allegations of minimum contacts of Bean with this District, and rest their jurisdictional argument on his purported partner status, the Court lacks jurisdiction over Bean.[1]

---

[1] Plaintiffs' counsel admitted in the press that their claims in this case stemmed from their observation that "there was a very large volume of money changing hands. That presented an obvious financial opportunity." *See* Bloomberg Law, *Crypto Lawyers Bet Big on Class Action Lawsuits as Market Slides*, September 21, 2022,

I.  The "BZX Dao" Owed No Duty To Plaintiffs

Plaintiffs' claim against the Leveragebox Defendants hinges on whether the Complaint states a claim for negligence against "defendant bZx DAO." *See* Opp. at 4, 7-11. Plaintiffs admit that they seek only recovery of economic losses. *See* Opp. at 8:1-2. Hence the "bZx DAO" (even were it a partnership) only owed them any duty of care if there was a "special relationship" between it and Plaintiffs.

In Opposition, Plaintiffs assert that the community of BZRX token holders at large, on the one hand, and Plaintiffs, on the other hand, had a "special relationship" giving rise to a duty to protect them against economic losses. To make this argument, Plaintiffs' Opposition invents new allegations out of whole cloth that are markedly different from what the Complaint actually states.

First, the Complaint lacks any allegations that BZRX token holders and Plaintiffs are anything more than strangers. Plaintiffs accessed the Protocol at their own discretion, and never transacted with BZRX token holders, or any of the defendants. Compl. ¶¶ 1, 3-29, 42. There are no allegations of BZRX token holders providing services to Plaintiffs. Use of the protocol was "permissionless," *i.e.*, Plaintiffs did not have, and did not need, the assent of any other BZRX token holders to use the Protocol. Compl. ¶ 40. Plaintiffs had no "account," or any direct contact, let alone privity, with any other person, let alone any of the defendants or BZRX token holders. *See id.* Plaintiffs had every opportunity to review the Protocol's open-source computer code, and the Terms of Service confirming these points, before using the Protocol. *See* Mot. at 6:17-7:1 (citing Gottlieb Decl. Ex. 3). Hence, Plaintiffs were never the intended beneficiary of any relationship or transaction with token holders, as is required to form a special relationship. *Andrews v. Plains All Am. Pipeline, LP*, No. CV-15-4113 PSG (JEMx), 2019 WL 6647930 (C.D. Cal. Nov. 20, 2019). There is no "special relationship" here, much less any relationship.

*available at:* https://news.bloomberglaw.com/business-and-practice/crypto-lawyers-bet-big-on-class-action-lawsuits-as-market-slides.

Second, Plaintiffs argue that BZRX token holders had "custody" of Plaintiffs' assets, in an attempt to liken autonomous software on the internet to a custodial bank. *See* Opp. at 6. That assertion is absolutely false, but more to the point on a Rule 12(b)(6) motion, that allegation is not in the Complaint. As the Complaint alleges, users of the Protocol, such as Plaintiffs, only interact with software on the internet; they do not interact with other users, the original developers of the Protocol, nor anyone who exercises control over the software. *See* Compl. ¶¶ 35-40. Users' transactions are non-custodial, which means that no third-party – not Defendants, not anyone – ever takes custody of users' assets; users maintain custody of their own assets at all times. *See* Compl. ¶¶ 39, 50. The Opposition readily concedes this point, explaining that Plaintiffs' funds were stolen <u>from users' wallets</u>, and not the Protocol. *See* Opp. at 3:5. Plaintiffs cite nothing from the Complaint to support the claim that the "bZx DAO" exercised custody. *See* Opp. at 6.

Plaintiffs, of course, knew all of these facts before they interacted with the Protocol. They concede that the Terms of Service for the Protocol was publicly available to Plaintiffs on Fulcrum, the site that they used to access the Protocol (Opp. at 22). Those Terms explain that the Protocol "may enable [users] to lend cryptocurrency . . . through the use of [their own] wallet," and users access the Protocol "solely and exclusively at their own risk."[2] Gottlieb Decl. at Ex. 3. In contrast, there are no facts in the Complaint that evince any intent to form a special relationship between the Plaintiffs and anyone; or any transactions, privity, or agreements between Plaintiffs and token holders that give rise to one.

Plaintiff's application of the *Gas Leak* factors is premised on the same "special relationship" fiction. *See* Opp. at 9. Contrary to Plaintiffs' assertions, the Complaint does not actually allege <u>any</u> transactions between Plaintiffs and Defendants, let alone one intended to affect the Plaintiffs here. Because there was no transaction between

---

[2] The provisions of the Terms also independently bar Plaintiffs from bringing their instant lawsuit. *See* Motion at 9.

Plaintiffs and Defendants – Plaintiffs' use of the Protocol was "permissionless," with no relationship needed – it was not and could not have been foreseeable to the "bZx DAO" that Plaintiffs would even use the Protocol, let alone suffer economic injury. The connection between Plaintiffs' economic losses and the Leveragebox Defendants' alleged activity, if any, was attenuated, given that Plaintiffs' losses were caused by a third-party criminal. Finally, Defendants' alleged misconduct was far from "morally reprehensible," given (i) the "bZx DAO" had no relationship to Plaintiffs, and never entered any transactions with them; and (ii) the Terms that governed Plaintiffs' activity made that lack of relationship exceedingly clear, and cautioned that use of the Protocol was at their own risk. *See* Gottlieb Decl. at Ex. 3.

Plaintiffs principally rely on *Fabian v. LeMahieu*, No. 19-cv-00054-YGR, 2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) to support their claim that a special relationship should exist between Plaintiffs and the Leveragebox Defendants. *See* Opp. at 5. The differences between *Fabian* and this case are manifest. In *Fabian*, the court did not analyze whether a special relationship existed, but sustained a negligence claim against defendants who were actively promoting and soliciting users to use their own *centralized* exchange, which was then hacked. *Fabian*, 2019 WL 4918431, at *3, *12. Unlike in *Fabian*, Plaintiffs here unilaterally and permissionlessly used autonomous software deployed on the internet. There are no allegations that BZRX token holders entered into any transactions with Plaintiffs, provided any services to them, or took custody of their funds so as to give rise to any special relationship.

The additional cases cited by Plaintiffs (Opp. at 9) are inapposite, because they concerned defendants and plaintiffs who had a servicing or employment relationship, or alleged non-economic losses. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132 (N.D. Cal. 2018) (finding "special relationship" where defendant contracted with and was paid by plaintiffs for small business services); *Everett Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL

9280242 (N.D. Cal. Sept. 14, 2016) (finding special relationship based on employer-employee relationship); *Sackin v. Transperfect Global., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2018) (same); *Witriol v. LexisNexis Grp.*, No. C05-cv-02392 (MJJ), 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (not addressing existence of special relationship because plaintiff alleged actual, rather than economic, damages).

The Opposition ignores the two most factually analogous cases, *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778 (EJD), 2018 WL 2215790 (N.D. Cal. May 15, 2018) and *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 942 (S.D. Cal. 2014). *See* Motion at 15 (analyzing cases). Plaintiffs offer no reasons why their allegations are distinguishable from those cases, whose identical negligence claims were dismissed for failure to plead a special relationship.

Finally, Plaintiffs' argument that BZRX token holders are liable under a theory of *respondeat superior* (Opp. at 11) is meritless. First, Plaintiffs conclusorily allege that the hacked-developer worked for BZRX token holders, Compl. ¶¶ 56, 68. But, this contradicts allegations that the developer worked at "bZx [referencing bZeroX LLC], a crypto company," Compl. ¶ 55, and ignores that control over the hacked portions of the Protocol (the BSC and Polygon deployments) had not yet been "transferred to the DAO." *See* Compl. ¶ 58. Second, as discussed above, neither the developer nor BZRX token holders had any "special relationship" with Plaintiffs to protect them from economic losses.

## II.  BZRX Token Holders Are Not In A Partnership With Each Other

In their Motion, the Leveragebox Defendants established that BZRX token holders are not, as a matter of law, in a general partnership with one another, because the required touchstones for partnership are conspicuously absent. *See* Motion at 18. Plaintiffs do not point to a single case holding otherwise. *See* Opp. at 13-17 (citing one law review article, and two articles by industry personnel and defendants' counsel). Rather, they proclaim that bZeroX LLC could not have turned over control of the BZX protocol to BZRX token holders *without* creating a general partnership.

*See* Opp. at 13:23-26.  That is not the law.

Contrary to Plaintiffs' arguments (which they admit they make "at a high level of generality," *see* Opp. at 13:23), the absence of a legal entity is not evidence of a partnership.  The existence of a general partnership is not a "default" position in the law, or formed whenever a formal legal entity is absent.  The formation of a partnership requires the elements of an intent to form a partnership, and other factors indicative of the existence of a partnership.  *See* Mot. at 18-22.

No such allegations exist here.  Plaintiffs completely ignore the Leveragebox Defendants' invitation (*see* Mot. at 20) to point to (1) any pleaded allegations (because there are none) of actual transactions or specific activity among BZRX token holders that suggests a collective intent to become co-owners to operate the Protocol for profit; (2) examples of activity that reflects an intentional agreement to share profits and losses; or (3) actual exercises of control by token holders.

Lacking law and facts, Plaintiffs revert to a strawman attack, suggesting that in the absence of finding a partnership, then no one is responsible and the Leveragebox Defendants "get-out-of-jail-free."  *See* Opp. at 16.  This is false.  The criminal who stole Plaintiffs' assets is legally responsible to Plaintiffs.  Compl. ¶¶ 51-54. Plaintiffs fail to allege any legal or factual basis for innocent bystanders, individuals who acquired tokens <u>after the hack</u>, or other victims such as the Leveragebox Defendants, to be jointly and severally liable with that wrongdoer.

### III.  In Any Event, The Leveragebox Defendants Are Not Partners

Even if a partnership were created among BZRX token holders when bZeroX LLC relinquished control of the Protocol, the Complaint does not sufficiently allege that the Leveragebox Defendants were "general partners."  Quite the opposite. Plaintiffs admit that (i) bZeroX LLC turned over all control of the Protocol to BZRX token holders and abdicated all involvement with the Protocol (Opp. at 13, 16); and (ii) the Leveragebox Defendants never owned BZRX tokens, let alone during at the

relevant time. *See* Opp. at 17 n.7.³ These concessions are fatal to their claim.

Even if Plaintiffs had alleged that Kistner and Bean held BZRX tokens, the Complaint alleges no facts that plausibly allege that they were themselves intentional members of a partnership. Absent from the Opposition is any argument that the Leveragebox Defendants <u>intended</u> to become co-owners to operate the Protocol for profit; that the Leveragebox Defendants <u>engaged in activity</u> that reflects an intentional agreement to share profits <u>and</u> losses; that BZRX token holders ever agreed to share profits or losses (or did so at all); that the Leveragebox Defendants actually exercised control over any alleged partnership business; or any contours as to who does and who does not fall within the partnership (and why the Leveragebox Defendants are captured). *Compare* Motion at 18-23 *with* Opp. at 16:1-12. Indeed, Plaintiffs sue two LLCs – Leveragebox and bZeroX – demonstrating that Kistner and Bean were using corporate forms.

Absent facts in the Complaint that Bean and Kistner were general partners of some partnership, Plaintiffs ask the Court to draw far-fetched inferences. *See* Opp. at 18:1-14. Plaintiffs speculate, for instance, that Bean's and Kistner's opinion "doubtless carries substantial weight" in the subsequent DAO; that the two were "intimately familiar with the operations of the partnership;" and that they had a "prior, substantial monetary interest in the predecessor entity." These arguments are invented and lack factual support in the Complaint. *Compare* Mot. at 5:13-17 *with* Compl. ¶¶ 67, 72-73. Plaintiffs may not amend the Complaint in opposition to a motion to dismiss, *see Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 (N.D. Cal. 2021), nor are these plausible inferences to draw from the Complaint, *see Pozzi*,

---

³ In an attempt to salvage this mistake, Plaintiffs assert that the Court can draw a factual inference of this key fact. *See* Opp. at 18 n.7. (*citing Stacy v. Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010)). That is not what *Stacy* stands for, nor is it the law. Rather the law is that courts can draw inferences from pleaded facts, but cannot invent facts necessary to sustain the cause of action. *See Pozzi v. Los Angeles*, No.2: 20-CV-7035 (SVW-PJW), 2020 WL 6586307, at *1 (C.D. Cal. Sept. 9, 2020) (*citing Iqbal*, 556 U.S. at 678).

2020 WL 6586307, at *1.

Plaintiffs alternatively assert that Bean's blog post on August 3, 2021 demonstrates that Bean and Kistner were "partners." *See* Opp. at 20. The actual blog post, however, is diametrically opposed to Plaintiffs' (mis)characterization. Bean wrote that the Protocol would "become managed entirely by the community of bZx tokenholders," *and not Bean and Kistner*; and that "the keys to the bZx treasury will be turned over to the DAO and bZx tokenholders [who] will be the main drivers of governance and decision making," and *not Bean and Kistner, or the "core founders and team members."* *See* Tom Bean, "Announcing bZx DAO," *bZx* Blog, available at https://perma.cc/6XGR-U6PZ (cited in Opp. at 20:1). Far from suggesting that Bean and Kistner would become partners in the "bZx DAO," it confirms that they had no such intention to do so.

Plaintiffs argue that the mere right to "suggest and vote on governance proposals" is enough to plausibly allege Kistner's and Bean's involvement as general partners – and to be jointly and severally liable for all other BZRX token holders. *See* Opp. at 21:26. That argument strains credulity. First, Plaintiffs do not allege that Kistner and Bean even hold BZRX tokens, and hence do not allege that Kistner and Bean could possibly participate in governance. Second, alleging the *ability* to participate in governance is not the same as alleging, beyond speculation, that they did. Otherwise, it is an argument that would apply to the thousands upon thousands of BZRX token holders (including Plaintiffs themselves). Finally, the right to make proposals and vote, even if they had it, is not the same as "control." There are no allegations in the Complaint that any of the Leveragebox Defendants exercised any control over the Protocol after it was relinquished to BZRX token holders.

All of these same flaws doom Plaintiffs' claims against bZeroX LLC and Leveragebox, who Plaintiffs concede abdicated all control when they turned over the Protocol's keys to the community of BZRX token holders. *See* Opp. at 20:8-11.

### IV. There Is No Basis To Pierce The Corporate Veil

Plaintiffs admit that they allege no facts that warrant piercing the corporate veil of Leveragebox and bZeroX LLC to impose liability on Bean and Kistner individually. Instead, Plaintiffs argue that the Complaint adequately pleads that Bean and Kistner were individual partners in the "bZx DAO." *See* Opp. at 18-19.

The only allegations as against Bean and Kistner are that they "appear to have" controlled their companies, *see* Compl. ¶ 67, and the conclusory statement that they "participated in decisionmaking of the bZx protocol and its successor" (although the Complaint does not allege that their supposed participation was on their own behalf, rather than their companies). *See* Compl. ¶¶ 72-73. Plaintiffs repeatedly assert that bZeroX LLC "dissolved" (Opp. at 19:11 & 26) or "ceased to exist" (Opp. at 19:2), but that suggestion contradicts the Complaint: Plaintiffs have sued the company, alleging that it is a Delaware LLC. *See* Compl. ¶ 29.

Furthermore, the Complaint alleges that the BSC and Polygon deployments of the Protocol, the only two deployments that were hacked, "ha[d] not yet been transferred to the DAO" at the time of hack, and "did not have the protection of the DAO" and the keys for those deployment were held by bZeroX LLC. *See* Compl. ¶ 58. Because the deployments that were hacked were not controlled by the DAO, and Plaintiffs do not allege that Bean and Kistner, as opposed to bZeroX LLC, controlled those deployments at the time, the Complaint does not allege any claim against Bean and Kistner *individually*. They are legally entitled to the limited liability protections of their duly formed companies, and should be dismissed.

### V. There Is No Personal Jurisdiction Over Bean

Contrary to Plaintiffs' assertion, Bean does not concede that if he is a partner in the purported partnership there is personal jurisdiction over him. Even if he were a partner in the "bZx DAO," the Court would still lack personal jurisdiction, since Plaintiffs fail to make even a single allegation that Bean individually engaged in any

activity in California beyond his work for bZeroX LLC and Leveragebox. *See* Compl. ¶¶ 28-29; *Ewing v. Empire Cap. Funding Group, Inc.*, No. 17 Civ. 02507 (LAB) (MDD), 2019 WL 157660, at *2 (S.D. Cal. Jan. 10, 2019).

Plaintiffs concede that they allege no minimum contacts of Bean with this forum, and rest their entire jurisdictional argument on his purported general partner status. *See* Opp. at 23:11-19. But, "[j]urisdiction over a partnership does not necessarily permit a court to assume jurisdiction over the individual partners." *Goehring v. Superior Court*, 62 Cal. App. 4th 894, 904-05 (Ct. App. 1998); *see also Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("[J]urisdiction over each [partner] must be established individually"). Accordingly, there lacks personal jurisdiction over Bean.

## VI. Plaintiffs' Class Allegations Should Be Stricken

In their Motion, the Leveragebox Defendants established that even accepting Plaintiffs' allegations as true, there are irreparable, fatal conflicts in a proposed class of all BZRX token holders, because some or all of the Plaintiffs are, on their theory, also defendants (as general partners of the bZx DAO). *See* Mot. at 23:5-24:25. Plaintiffs' response re-interprets their own allegation to claim that they do not hold BZRX tokens. *See* Opp. 24:2-3. Notwithstanding the explanation, Complaint ¶ 64 alleges that Plaintiffs did not hold "meaningful" amounts of tokens, which is tantamount to alleging that they held *some* tokens. Given that Plaintiffs do not dispute that a plaintiffs class cannot include BZRX token holders, the class allegations should be struck. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (striking class allegations on the pleadings).

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice as against the Leveragebox Defendants.

| | | |
|---|---|---|
| 1 | Dated: October 4, 2022 | HAHN LOESER & PARKS LLP |
| 2 | | By: _s/Michael J. Gleason_ |
| 3 | | Michael J. Gleason, Esq. |
| | | One America Plaza |
| 4 | | 600 W. Broadway, Suite 1500 |
| 5 | | San Diego, CA  92101 |
| | | (619) 810-4300 |
| 6 | | |
| 7 | | MORRISON COHEN LLP |
| 8 | | Jason P. Gottlieb, Esq. (4056008) |
| 9 | | Daniel C. Isaacs, Esq. (4875902) |
| | | Alexandra Wang, Esq. (5416748)* |
| 10 | | 909 Third Avenue |
| 11 | | New York, New York 10022 |
| | | (212) 735-8600 |
| 12 | | *Admitted Pro Hac Vice* |
| 13 | | **Pro Hac Vice Forthcoming* |
| 14 | | |
| | | *Counsel for Defendants Leveragebox* |
| 15 | | *LLC, bZeroX LLC, Kyle Kistner, and* |
| 16 | | *Tom Bean* |